# H. C. REDINGTON & Co. v. CHARLES H. ROBERTS.

*Trespass. Sale of goods. Delivery and acceptance.*

What constitutes a delivery and acceptance of goods, considered and discussed.

As a general rule, the acceptance of property implies a delivery.

A vendee, acquires no property or title to goods obtained by fraud, practiced on the vendor under color of a purchase, whether on credit or otherwise; but the mere insolvency of the vendee, will not constitute such fraud, nor will that effect be produced, by a consciousness on the part of the vendee, of his inability to pay for the goods, if the purchase was in good faith, and not with the preconceived design of not paying for them.

Where a firm, by the name of J. A. Braynard & Co. ordered goods, which by the terms of the contract, were to be delivered at their store free of expense to. them, and the vendors subsequently proposed by letter, that said firm should take the goods at a certain depot, the vendors paying the freight from the said depot to their store, and J. H., a member of said firm answered said letter, consenting so to take the goods, and also informed the vendors, that J. A. had gone out of the firm and left ; the vendors, before they received this letter, having sent the goods to the said depot, they also answered the letter of J. H., making no objection on account of the information, and informed J. H. that they had sent the goods, and a bill of the same by mail. While this correspondence was going on, a teamster, who had general orders to take such goods, as he should find at said depot, for said firm, but was not otherwise the agent of the said firm, took the said goods from said depot, for the purpose of freighting them to said firm, and while so doing, they were attached as the property of J. A. Braynard & Co. by their creditors, and the said J. H. compromised with the said creditors, and gave them bills of sale of the said goods, and in pursuance of this arrangement, the creditors received most of the goods, and J. H. a small portion; under this state of facts, *it was held,* that the first contract was abandoned, and a new one made under which, there was such a delivery and acceptance of the goods, as to vest the title of the same in J. A. Braynard & Co.

TRESPASS for a quantity of scythes, scythe snaths, forks and hoes. Plea, the general issue, and trial by jury.

Upon the trial, the following facts were proved. The plaintiffs are manufacturers, and wholesale dealers, in such articles, as they have sued for, and reside in Littleton, N. H.

On the 25th day of November, 1850, the travelling agent of the plaintiffs, called on Messrs. J. A. Braynard & Co., merchants, in Morgan, Vt., and on that day, J. A. Braynard & Co. gave said agent an order for a quantity of scythes, scythe snaths, forks and hoes. It was agreed at the time, between said agent and J. A. Braynard

& Co., that the freight of said articles was to be paid by the plaintiffs. Sometime in January, 1851, the firm of J. A. Braynard & Co. failed—and J. A. Braynard, one member of said firm, absconded, but the plaintiffs had no notice thereof. On the 15th day of March, 1851, the plaintiffs wrote a letter to said firm of J. A. Braynard & Co. and forwarded the same by mail to Morgan Vt. and the same was received by J. H. Braynard, a member of said firm, enquiring, if there were teams running from Morgan to St. Johnsbury Depot, and if said firm would take the goods at the said depot, and charge freight to plaintiffs. Also saying, if it was not convenient for said firm to take the goods at said depot, then plaintiffs would forward them by their own teams, in season.

On the third day of April, 1851, the plaintiffs deposited said goods, at the said Railroad depot, in St. Johnsbury, directed to J. A. Braynard & Co., Morgan, Vt., care of J. M. Culver, Derby Center, Vt., and left directions, to have said goods forwarded by Flint's Team, which run northwardly from said depot. The goods were charged in account by the plaintiffs, to J. A. Braynard & Co. and the agreement was, at the time the order was given, that they were to be paid for, the fall or winter after delivery. On the 7th day of April, 1851, the plaintiffs forwarded a bill of the goods, and a letter to J. A. Braynard & Co. by mail which was received.

The said J. M. Culver was a clerk or agent in the Protection Union Store, at Derby Center, Vt., and acted as agent for plaintiffs to some extent, in forwarding and distributing goods for the plaintiffs, to places off the direct line of regular communication; but was not agent for plaintiffs, for any other purpose.

Shortly after receiving the bill of goods and letter of the plaintiffs, of April 7th, 1851, J. H. Braynard, a member of the firm of J. A. Braynard & Co., called at the said store at Derby Center, (said Culver had then removed to Massachusetts,) and enquired if the said goods had arrived, and was informed that they had not. He then left word at the tavern there, to have the goods brought by some of the teams, but did not name any particular team, nor did it appear, that his errand was done to any one.

On the 10th day of April, 1851, John H. Braynard wrote the plaintiffs, but this letter was not produced by them. John H. Braynard, who was called by the plaintiffs, testified that he wrote to them, that his brother J. A. Braynard had left; but that another

brother talked of taking hold, and assisting him; that he could as well take the goods at the depot in St. Johnsbury, and wrote what the prices of freight would be, and if they forwarded the goods, he wished them marked to his brother's name, and directed to Morgan Four Corners. This letter, was written in reply to a letter of March 15th, 1851, and before the bill of goods and letter of April 7, 1851, was received. To this letter the plaintiffs replied, on the 19th of April, 1851, as follows:

"LITTLETON, April 19, 1851.

"Mr. JOHN H. BRAYNARD, Morgan, Vt.:—

"Yours of the 10th inst. is received. We forwarded the goods "ordered by J. A. Braynard & Co. to Derby Center, to care of J. "M. Culver, and forwarded a bill by mail to Messrs. J. A. Bray- "nard & Co. on the 7th inst., to Morgan, Vt., which we presume "has reached you ere this. If the goods are not received in sea- "son, we wish you to inform us early by mail."

(signed)                "H. C. REDINGTON & Co."

In a few days, after said goods were deposited by the plaintiffs at the depot in St. Johnsbury, they were taken by a teamster by the name of Stratton, who carried them on his team as far as Lyndon, where they were taken by the defendant as an officer, on certain attachments, against said J. A. Braynard & Co. and were deposited by the defendant, with one Mr. Woodruff, a hotel keeper there, for safe keeping. While said goods were so in the keeping of Woodruff, J. H. Braynard was at Lyndon, and told Woodruff, that the goods did not belong to their firm, that they had failed, and the goods belonged to the plaintiffs.

After the goods had been under the above attachment for two or three weeks, an arrangement was made between the said J. H. Braynard, and said attaching creditors, and said J. H. Braynard gave to said creditors a bill of sale of the goods, and also gave an order on the defendant to forward said goods, by Stratton's team, which was done, and said goods were carried by Stratton, to Derby Center, where most of them were received by said creditors, and a small part by the said J. H. Braynard.

It did not appear, that the said Stratton had any special directions from the said Braynard to get these goods; but it did appear, that while said Braynard & Co. were in business, he had a general order to receive and bring all goods found at said depot, directed

Redington & Co. *v.* Roberts.

to them; but it did not appear, that he had freighted any goods for them, since their failure.

The plaintiffs, received no information of the failure of the firm of J. A. Braynard & Co., until the fall of 1851, and long after the goods had been taken and disposed of, as above stated.

Upon these facts the County Court,—POLAND, J., presiding,—decided that plaintiffs could not recover, and directed a verdict for the defendant.

Exceptions by plaintiffs.

*S. W. Slade* and *J. D. Stoddard* for plaintiffs.

Cited in argument, *Drake* v. *Redington* 9 N. H. 243. *Lane et al.* v. *Jackson*, 5 Mass. 330. 1 Chit. Pl. 6. Angel on the Law of Carriers §§ 497–498–499. Wheaton's Selwyn 40, 412. *Woodruff* v. *Noyes*, 15 Conn. 335.

*Bartlett & Roberts* for defendant.

Cited Story on Cont. §§ 509, 525, 522. *Foster* v. *Frampton*, 6 B. & C. 107. *Johnson* v. *Newhall*, 35 E. C. L. 202. *Sawyer* v. *Joslyn*, 20 Vt. 178.

The opinion of the court was delivered by

ISHAM, J. The defendant is prosecuted, in this action of trespass, for taking and converting to his own use various articles of personal property mentioned in the declaration. To sustain this action, the plaintiffs must prove in themselves, a property in the goods either general or special, and the right of immediate possession. If these facts are proved, the plaintiffs will be entitled to recover of the defendant, as he has not set up any title to this property in himself, nor by special plea, any matter of justification.

The defendant, denies this right of property in the plaintiffs, as well as their right of possession, and insists, that the goods were owned by J. A. Braynard & Co., to whom alone he is responsible,. if any liability rests upon him. Whether the plaintiffs have that interest and right of possession in this property, which will enable them to sustain this action, is the question arising in the case.

That the plaintiffs were manufacturers and owners of this property, is not disputed. For the purpose however of showing a sale of this property, by the plaintiffs to J. A. Braynard & Co. their

written order of November 28, 1850, was introduced and read in evidence. This order was given by J. A. Braynard & Co., by virtue of a contract, for the purchase of these articles, made with the traveling agent of the plaintiffs. By that contract, the goods were to be delivered free from any charges for freight, at the store of J. A. Braynard & Co. at Morgan, in this State, during the then coming winter, and were to be paid for, in the fall or winter after delivery.

We learn from the case, that the goods were not delivered according to the terms of the agreement ; but were deposited at the Railroad depot, in St. Johnsbury, so late as the third day of April, 1851, directed to J. A. Braynard & Co., Morgan, Vt., care of J. M. Culver, Derby Center, with a request that they should be forwarded by Flint's team, which ran from the depot northwardly. If the case is to be governed by that contract and order, it is obvious, that Braynard & Co. were at liberty to consider their order as not having been answered, and the sale not perfected ; for its provisions had not been complied with, by the delivery of the goods, either as to the time or place of delivery. For this reason, they had a right to treat the contract as at an end, to disaffirm the purchase, and object to receiving the goods. It is obvious, also, that when the goods were deposited at the depot, they were the property of the plaintiffs, either actual or constructive, and no acceptance of the same, by Braynard & Co.

If the legal relation of the parties, therefore, has not been changed by some subsequent arrangement, from what it was at the time the goods were taken by Stratton at the depot in St. Johnsbury, it is difficult to see, how the claim of the plaintiffs can be resisted ; for there is no propriety in saying, that the act of Stratton, done for the avowed purpose of transporting the goods to Braynard & Co., operated as a delivery of the goods by the plaintiffs, or as an acceptance of the same by Braynard & Co. Stratton had no authority to act for the plaintiffs, except to transport their goods. He was not their agent for any other purpose, and there is nothing in the case to show, that he was authorized by Braynard & Co. to accept *these* goods on that contract, or transport *them* for their benefit. His general authority to receive and transport all goods found at that depot for them, is not sufficient to warrant the exercise of a power, which changes the legal rights of parties to an

unexecuted contract; as this, would be virtually placing him in a position to make a contract for them. Such a delegation of power, was evidently not intended in this case, and is not within the general duties of a carrier. To give that effect, to this act of Stratton, it should appear, at least, to have been done under directions given to him by them, in relation to *these particular goods ;* such directions would involve, not merely the transportation of property, but the ratification of a contract.otherwise inoperative.

While Braynard & Co. therefore had the right to insist upon the performance of the contract, and require a delivery of the goods agreeably to their stipulations, yet the non-delivery, at the time and place originally specified, could be waived, and a full performance of the contract effected under other arrangements, at different times and places. If the goods were intercepted by Braynard & Co., while they were *in transitu*, and taken into their actual possession, or were disposed of by them to others, the delivery and acceptance of the goods, would, as to them be complete, and the contract of sale be rendered obligatory and binding. Story on Cont. § 522. Or if the act of Stratton in taking the goods was subsequently ratified by them, the effect would be the same *;* for in an action against them for the price, they would thereby be estopped, to deny their acceptance of the goods, and be equally precluded from objecting to their quality or quantity. This is the rule given by TINDAL, Ch. J., in *Acebal* v. *Levey*, 10 Bing. 376, by which to ascertain, whether the delivery and acceptance are perfected and complete. *Howe* v. *Palmer*, 3 Barn. & Ald. 321. Chit. on Cont. 390. And the purchaser will be so precluded, even if the quality does not answer the stipulations of the contract, unless within a reasonable time, he signifies his disapproval. Smith's Mer. Law 579 note (o.)

The case then presents the inquiry, whether the original contract of sale, has been subsequently varied by the parties, and the sale perfected under that subsequent arrangement in a manner, to pass the title of this property from the plaintiffs, and vest the same in Braynard & Co. We learn from the case, that on the 15th day of March, 1851, the spring after the contract of sale was made, and after the goods were to be delivered, the plaintiffs wrote to J. A. Braynard & Co. to ascertain whether they would take this property at the depot in St. Johnsbury, on their paying them the ex-

penses of transportation.  The answer to this letter on the ¹0th day of April, 1851, was not produced, but its contents were r ed by John H. Braynard, who wrote the letter, and was one of u. firm of J. A. Braynard & Co.  By this letter, the plaintiffs were informed of a change in the firm of Braynard & Co., and that J. A. Braynard had left; but, that assistance was expected from another brother, and that they would take the goods at the depot, and informed the plaintiffs, what would be the charges for freight.  He also requested, in the letter, that if the goods were sent, they should be marked in the name of his brother, and directed to Morgan Four Corners.  Previous to this letter, and on the third day of April, the goods were left at the depot, of which information had been sent, by letter of April 7th, to Braynard & Co., with a bill of the goods enclosed.  Evidently therefore, the plaintiffs could not have acted on the directions of J. H. Braynard, as contained in the letter of April 10th, in forwarding the goods to the depot.  The parties were both anxious, that the goods should be forwarded and received agreeably to their contract of sale and purchase; but both were laboring under difficulties, for the want of a more definite and certain arrangement by which that was to be effected; something having been done by one or the other of these parties, to affect this general object, before their respective letters were received.  This letter of April 10th was answered by the plaintiffs, in their letter to J. H. Braynard of April 19th, acknowledging the receipt of that letter, and informing him, that the goods had been sent as originally directed, and that a bill had been forwarded on the 7th inst. to Morgan, Vt., which they presumed had been received by him before that time; if not, they wished to be informed by mail.  While this correspondence was in progress, and without the knowledge of either party, the goods were taken by Stratton, a few days after they were left at the depot, and carried as far as Lyndon, where they were attached as the property of J. A. Braynard & Co. in which condition they remained for two or three weeks, and until an arrangement was effected by J. H. Braynard, with the attaching creditors, when most of the goods were received by the creditors in payment of their debts, and a small portion by J. H. Braynard.

From this correspondence and the subsequent conduct of the parties, we may properly regard as facts in the case, that the terms of the contract, as at first stipulated, in relation to the time and

place of delivery of the goods, were altered, and that the contract of sale might be perfected at another time and place. And in the next place, that J. H. Braynard was recognized and accepted by the plaintiffs, as one authorized to receive the delivery of the goods, notwithstanding the change in the firm of J. A. Braynard & Co.; and that his acceptance of the goods, would render the sale as obligatory, as if the firm of J. A. Braynard & Co. was in existence, and the goods received by them.

When these letters were received by the parties respectively, these facts must have been so understood, and have become the basis of their subsequent conduct. In the application of the principles of law, that govern this case, it is to be observed, that this investigation is to be had, as if the matter was pending between the plaintiffs on the one hand, and Braynard & Co. on the other, and that if, as between them, the sale is perfected, so that the title has passed from the plaintiffs, this action cannot be supported.

If an action had been commenced by the plaintiffs against Braynard & Co. for goods sold and delivered, it would be necessary to prove the agreement for the sale and purchase of this property, and a delivery of the same on that contract by the plaintiffs, as well as their acceptance, by Braynard & Co. That there was an agreement, for the sale and purchase of this property is not disputed; and that there has been such an acceptance by J. H. Braynard in behalf of himself and Braynard & Co., as to render the sale conclusive upon them, is equally obvious. Though they were not bound by the act of Stratton, when he first took the goods at the depot, and though J. H. Braynard denied the right and title of Braynard & Co. to the property when first attached at Lyndon, yet, when he afterwards compromised with the attaching creditors, and gave them respectively, bills of sale of the greater portion of this property, with an order on the defendant, to forward them by Stratton's teams, for the creditors, and this was done, in pursuance of that order, and J. H. Braynard received the remainder, the acceptance of the property was complete, and the contract of sale rendered binding upon them, so that, no one of the firm of Braynard & Co. could thereafter deny the purchase, or their possession, under circumstances which would preclude them from disputing their quality or quantity. And in relation to the delivery of the property by the plaintiffs under that contract, it is to be observed,

that, as a general rule, the acceptance of property, implies a delivery. After the agreement for the sale had been made, and the goods manufactured, the whole object of the plaintiffs seems to have been, and was, to get the property into the hands of Braynard & Co. For this purpose, the goods were sent to the depot, and the letter written, requesting Braynard & Co. to take them at that place, and agreeing to pay the freight therefor. Evidently, they have no cause for complaint, when that object has been accomplished as they requested it should be. It was what they solicited to have done, in their letter of March 15th, and which Braynard agreed to do, by his letter of April 10th, and which the plaintiffs, expressed a hope had been done, by their letter of April 19th. And, though the goods were taken by Stratton, and received by Braynard before this correspondence was closed, yet, as the act of Stratton, was in conformity with the arrangement thus made, and carried out the mutual intent and desire of the parties, the correspondence, when closed, ratified whatever had been previously done, in perfecting that sale and delivery. In all this, the plaintiffs have no cause of complaint. They sold the goods to Braynard & Co., and in pursuance of that sale, have passed the property into their hands, under such circumstances, as precludes the plaintiffs, from disputing the delivery, and Braynard & Co. from objecting to their quality, and for which, in an action for goods sold and delivered, Braynard & Co. would evidently be liable.

It is insisted however, that no title passed from the plaintiffs, and vested in Braynard & Co., in consequence of the failure and insolvency of Braynard & Co. after the goods were ordered, and before their delivery. It is stated in the case, that the firm of Braynard & Co. failed in January, 1851, and though the plaintiffs, were informed on the 10th day of April by J. H. Braynard, of a change in the firm, and that J. A. Braynard had left, yet, it is found as a fact in the exceptions, that plaintiffs did not know of the failure, until the fall of 1851. There is no doubt, the principle is correct, that the vendee acquires no property, or title, to goods obtained by fraud, practised on the vendor under color of a purchase, whether on credit or otherwise; and the principle is generally sustained by the authorities, that the title does not pass, if the goods were purchased, with the *preconceived design of not paying for them. Earl of Bristol* v. *Wilsmore,* 1 Barn. & Cress. 514.

*Ferguson* v. *Carrington*, 9 B. & C. 59. *Street* v. *Smith*, 1 C. M. & R. 312. To render a contract of sale void, so that the property will not vest in the vendee, in consequence of the fraud of the vendee, it was held by GIBBS, Ch. J., in the case of *Noble* v. *Adams*, 7 Taunt. 59, that the fraud must amount " to the offence, of obtaining goods by false pretences." But PARK, J., in the case of *Irving* v. *Motley*, 7 Bing. 543, thought otherwise, and observed, that it was a mistake in ascribing these views to Ch. J. GIBBS ; and held, that fraud might be sufficient for that purpose, though, it did not amount to that offence. Without saying, what may or may not amount to such a fraud as will enable the vendor, to avoid the contract of sale and reclaim the goods, it is sufficient to observe, that the mere insolvency of the vendee, is not sufficient for that purpose, nor, will that effect be produced, by a consciousness on the part of the vendee, of his inability to pay for the goods. It was so held by TINDAL, Ch. J., in *Irving* v. *Motley*, 7 Bing. 543. And in *Cross* v. *Peters*, 1 Greenl. 376, it was held, " that mere insolvency of the vendee, and the liability of his goods to immediate attachment by his creditors, though well known to himself, and not disclosed to the vendor, would not, of itself, avoid a sale." *Lupin* v. *Marie*, 6 Wend. 83. *Rowley* v. *Bigelow*, 12 Pick. 307.

In this case, there is no pretence, of any fraudulent representations made at the time of the purchase; and the fact of the insolvency of the vendees, at the time of making the contract and giving the order, is not found ; much less, that there was a preconceived design on their part, not to pay for them. These facts, if true, should be distinctly stated and found, on testimony offered for that purpose ; we are not at liberty, to draw or find them, as matter of inference. Had the plaintiffs, undertaken to exercise their right of stoppage *in transitu*, or in any way, to reclaim the goods before they had passed into the hands of Braynard & Co., their failure and insolvency might, in that event, be an important circumstance. But, the actual possession of this property, was obtained by them under their contract of purchase, in the spring of 1851, and no attempt to reclaim them, or to exercise any act of ownership over them by the plaintiffs, is shown in the case, from that period until the commencement of this suit in April, 1852.

We think, the interest and right of property in these goods, vested in Braynard & Co., and that the plaintiffs have no claim to

them, either general or special, nor that right of possession, which will enable them to sustain this action.

The judgment of the County Court must therefore be affirmed.