[*January Term*, 1872.]

KRAFT, HOFFMAN & CO., PLAINTIFFS IN ERROR, *v.* WILLIAM DULLES & CO., DEFENDANTS IN ERROR.

When goods are obtained from their owner by fraud, and the facts show that the owner intended to transfer both the property in, and the possession of, the goods to the person guilty of the fraud, there is a contract of sale, however fraudulent the device, and the property passes. In such case the contract is voidable, but not void; and, on discovering the fraud, the vendor may rescind the sale and repossess himself of the goods, if found in the possession of such vendee, or of his assignee for the benefit of creditors.

If a vendee purchase goods with the intention of not paying for them, or with the knowledge that he is insolvent and will not be able to pay for them, though at the time of the purchase he makes no representations as to his condition, he is a fraudulent purchaser; and the vendor, upon discovering the fraud, may rescind the sale and recover possession of the goods from such vendee, or his assignee for benefit of creditors.

Where goods are purchased, and possession of them obtained, upon condition that they are to be paid for in cash or in the note of the purchaser, the property in the goods does not pass until payment, according to the terms of the contract, is made or tendered; and if the purchaser, without paying or tendering payment in the way agreed, fails and makes a general assignment of his property for the benefit of creditors, including the goods so purchased, the vendor has the right, as against such assignee, to repossess himself of the goods.

THIS is a petition in error to reverse the judgment and proceedings in Special Session.

Kraft, Hoffman & Co. *v.* Dulles & Co.

It appears from the bill of exceptions, which purports to embody all the testimony given at the trial, that the plaintiffs in error, Kraft, Hoffman & Co., who were defendants below, were wholesale clothing merchants, doing business in this city; and that the defendants in error, William Dulles & Co., who were plaintiffs below, were merchants, doing business in Philadelphia, having also an office or agency in New York.

That on the 1st or 2d of February, 1870, Isaac Kraft, of the firm of Kraft, Hoffman & Co., purchased for his house, of Dulles & Co., at their New York agency, goods to the amount of $1,102.79, to be paid for by the note of Kraft, Hoffman & Co., at four months, to their own order.

The goods were put up at the house of the vendors in Philadelphia, part on the 2d, and the residue on the 4th of February, and were shipped and received by the vendees, at their store in Cincinnati, on the 8th or 9th of February.

On the 11th of February, the vendees, Kraft, Hoffman & Co., made an assignment of all their goods and effects, including the goods purchased of Dulles & Co., to Alexander Mack, for the benefit of their creditors. In this assignment was embraced the goods, etc., in a branch house of Kraft, Hoffman & Co., at La Crosse, Wisconsin. . Their liabilities, at the time of the assignment, amounted to about $44,500; and their assets (the value of the stock on hand being ascertained by appraisement, and the notes and accounts taken at their face), amounted to about $20,500, of which said notes and accounts comprised $8,691.10, and the goods at the La Crosse store, $3,320.52.

It appears, from the testimony of Kraft and Hoffman, who were called as witnesses in their own behalf, that the firm had been hard pushed for money for some time prior to the assignment, and in the year previous had somewhat reduced the expenses of their business. That on the 8th or 9th of February, 1870, a sight draft for $500, drawn on them by one of their eastern creditors, was presented for

payment, which they were unable to pay, and "being hard pressed on all sides concluded to make an assignment."

Kraft, in his direct examination, stated that when last east, at the time of the purchase of Dulles & Co., he purchased only between $5,000 and $6,000 worth of goods; that Dulles & Co. insisted on his taking whole cases of goods containing twenty-four and twenty-eight pieces, but he only took from ten to twelve pieces of each. On cross-examination, he says he selected $7,000 to $8,000 worth of goods in New York at that time, of which from $6,000 to $7,000 were delivered before the assignment; that two houses in New York refused to sell him goods on credit at that time, of one of whom, J. C. Howe & Co., it appears his house had been previously in the habit of buying on credit; that some of the parties, of whom he made purchases, declined to forward the goods, and others, who shipped, stopped the goods *in transitu*.

Jacob Wendell, of the house of J. C. Howe & Co., testified that about the 2d of February, 1870, Mr. Kraft came into their store and selected some goods from their stock, when witness told the salesman that he wished to see Mr. Kraft in the office. "I told Mr. Kraft that we were more particular in our credits this season than usual; and I asked him for a statement of what capital his firm had in their business. He replied, he had been in the market a good many years and did not see the necessity of making a statement. I then asked him, you do not, then, feel it your interest to make a statement, and he said no. I told him that, under the circumstances, we could not deliver him the goods."

It appeared, also, that Dulles & Co. had, some two years previous, sold goods on credit, to Kraft, Hoffman & Co., to the amount of about $500, which were paid for.

Oswald J. Martin, one of the firm of Dulles & Co., and who made the sale to Kraft, Hoffman & Co., testified that, "On or about the 1st of February, 1870, Mr. Kraft called at our office in New York city, and requested to see sam-

ples of our goods, which I showed him, asking him our regular prices on a credit of sixty days.    After showing him the goods he objected to my terms, namely, the sixty days credit, stating that I had sold his neighbors, in Cincinnati, in the same trade, our goods on four months' credit, and that he was as much entitled to four months' credit as any of them.    After some parley I agreed to sell him the goods at four months, supposing from his talking in this manner that he was worthy of credit."

It was testified to, by witness for plaintiffs in error, that it is the general custom among merchants, in Cincinnati and in the eastern cities, where goods are purchased, to be settled for by note at four months, to allow the purchaser thirty days from the date of the purchase within which to deliver the note.

The plaintiffs in error did not give or tender to the defendants in error a note for the goods before they assigned, nor has any note been given or tendered since.

On the 19th of February, 1870, Richard H. Chapman, one of the firm of Dulles & Co., called at the store of Kraft, Hoffman & Co., in Cincinnati, and saw them, and identified the goods in question and demanded a return of them, which was refused.    He came to Cincinnati to get the goods back.

On the 21st of February, which was Monday, William Dulles & Co. brought this action in replevin and obtained possession of the goods.

At the trial the judge charged the jury as follows: "1. If you find that Kraft, Hoffman & Co. purchased the goods in question with the intention of not paying for them, or with the knowledge that they were insolvent and would not be able to pay for them, though they made no representation at the time of the purchase, they acquired in law no title to them, and plaintiffs must recover.

"2. If you find that Kraft, Hoffman & Co. purchased the goods in question on condition that they were to be paid for with their note at four months, and without giving or

tendering to the plaintiffs said note, failed and assigned, then plaintiffs are entitled to recover in this action the possession of said goods, the defendants not having complied with the conditions of sale; provided nothing had been done by plaintiffs to indicate a waiver of the condition, or a consent that the goods should be delivered and the property pass without the return of the note in a reasonable , time—and what is a reasonable time is to be gathered from the evidence; and provided there has not been a want of diligence in reclaiming the property on the part of the plaintiffs."

The jury returned a general verdict for the plaintiffs. The defendants moved for a new trial, which was overruled, and judgment rendered on the verdict for the plaintiffs. Defendants excepted to the overruling of the motion for a new trial, and tendered their bill of exceptions, which was allowed, and thereupon filed this petition in error, praying to have the judgment set aside and a new trial awarded.

*Caldwell, Coppock & Caldwell*, and *J. Wolf*, for plaintiffs in error.

*Hoadly & Johnson*, for defendants in error.

MINER, J.   The errors alleged are:

1. That the verdict is against the weight of evidence.
2. That the verdict is against law.
3. That the court erred in its charge to the jury.

The third ground of error will be first considered.

Whenever goods are obtained from their owner by fraud, and the facts show that the owner intended to transfer both the property in, and the possession of the goods to the person guilty of the fraud, there is a contract of sale, however fraudulent the device, and the property passes.   In such case the contract is *voidable* but not void *ab initio;* and, on discovering the fraud, the vendor may rescind the sale and repossess himself of the goods if found in the possession

of the fraudulent vendee, or of any one deriving title from him except an innocent purchaser for value, and without notice. Such we understand to be now the settled law both in England and America. Benjamin on Sales, 319; *Load* v. *Green*, 15 M. & W. 216; *White* v. *Garden*, 20 L. J., C. P. 167; *Stevenson* v. *Newnham*, 13 C. B. 285; *Pease* v. *Gloahec*, 3 Moore P. C., N. S. 566; Story on Sales, sec. 200, and cases cited in note; *Lacker* v. *Rhoades*, 45 Barb. 499.

Such being the general rule of law in respect to fraud in such cases, it was the duty of the court to instruct the jury what constituted such fraud; and the jury were told, in this part of the charge, that if the vendees " purchased the goods in question *with the intention of not paying for them,* or *with the knowledge that they were insolvent and would not be able to pay for them,*" though they made no representation at the time of the purchase, they acquired, in law, no title, and the plaintiffs must recover."

Now, the only error that can be predicated on this part of the charge is, that there is no actual fraud, on the part of a vendee, in purchasing goods " with the intention of not paying for them," or " with the knowledge that he is insolvent and will not be able to pay for them."

It has been frequently held, and seems to be well settled, that where a vendee purchases, with a preconceived design of not paying for the goods, it is a manifest and direct fraud. Story on Sales, sec. 176; *Earl of Bristol* v. *Wilsmon*, 2 Dow. & Ryl. 755; *Stevenson* v. *Hart*, 4 Bing. 476; *Load* v. *Green*, 15 M. & W. 216; *Ferguson* v. *Carrington*, 9 B. & C. 59; *Carey* v. *Hotailing*, 1 Hill (N. Y.), 311; *Thompson* v. *Rose*, 16 Conn. 71; *Bedingti* v. *Roberts*, 25 Vt. 694; *Lacker* v. *Rhoades*, 45 Barb. 499; *Hennequin* v. *Naylor*, 24 N. Y. 139. Though it has been held otherwise in Pennsylvania. *Smith* v. *Smith*, 21 Penn. St. 367; *Backentoss* v. *Speicer*, 31 Penn. St. 324.

As to the other proposition contained in this part of the charge, namely: If the vendee made the purchase, " with the knowledge that he is insolvent and will not be able to

pay for the goods" (if, in this charge, it is to be treated as a distinct proposition, and not as a repetition of the former proposition in different language, the latter being, most probably, the understanding and intention of the judge)— the authorities are not so clear.

In *Congers* v. *Ennis*, 2 Mason, 239, Judge Story says: "If a man, knowing his own insolvency and utter incapacity to make payment, purchases goods of another who is ignorant of any change in his circumstances, and sells them under the most implicit belief of the good faith and solvency of the buyer, in what respect does the transaction differ from a direct affirmation, by the buyer, of his own good faith and solvency?"

And, in *Torvell* v. *Bradlee*, 9 Gill & J. 220, it was held that, "If parties purchase goods, knowing themselves to be insolvent and without any expectation of paying for them, and in circumstances which preclude the vendor, by ordinary prudence, from becoming acquainted with the facts, which are concealed from him by the purchaser, who shortly afterward fails and applies for the benefit of the insolvent laws, the contract of sale is fraudulent and void, and passes no title." And see *Biggs* v. *Barry*, 2 Curtis C. C. 262, 263.

Mere insolvency of the purchaser and inability to pay for the goods at the time, though well known to himself and not disclosed, will not avoid the sale. *Redington* v. *Roberts*, 25 Vt. 694; *Nichols* v. *Primer*, 18 N. Y. 295; *Biggs* v. *Barry*, 2 Curtis C. C. 259, and other cases.

We have not, in our limited researches, found any case, except perhaps the case in 21 Penn. St., above cited, which reaches to the extent of deciding that a purchase made under the state of facts presented in that part of the charge now under consideration would not be a fraudulent purchase. See *Irving* v. *Motley*, 7 Bing. 543, 544; *Cross* v. *Peters*, 1 Greenleaf, 376; *Biggs* v. *Barry*, 2 Curtis C. C. 262, 263.

Submitting the matter to our own moral perceptions

alone, we can not see a shade of difference as to the *mala fides* between the two propositions presented in this part of the charge.

The second proposition submitted to the jury, and remaining to be considered, was as follows: "If you find that Kraft, Hoffman & Co. purchased the goods in question, on condition that they were to be paid for with their note at four months, and without giving or tendering to the plaintiffs said note, failed and assigned, then plaintiffs are entitled to recover, in this action, the possession of the goods, the defendants not having complied with the terms of sale."

We omit, from this part of the charge, the qualifying conditions stated by the court, as we do not think there was any question of waiver, or want of due diligence, on the part of defendants in error.

In *Coggill* v. *Hartford and New Haven Railroad Co.*, 3 Gray (Mass.), 545, 546, the court say, "It has long been the settled rule of law, in this commonwealth, that a sale and delivery of goods, on condition that the property is not to vest until the purchase money is paid or secured, does not pass the title to the vendee, and that the vendor, in case the condition has not been fulfilled, has a right to repossess himself of the goods, both against the vendee, and against his creditors claiming to hold them under attachments;" and cite *Hussey* v. *Thornton*, 4 Mass. 405; *Marstin* v. *Baldwin*, 17 Id. 606; *Barrett* v. *Pritchard*, 2 Pick. 512; *Whitewell* v. *Vincent*, 4 Id. 449; *Hill* v. *Freeman*, 3 Cush. 257.

And, the jury having found that the sale was conditional upon the giving of the note (the vendee having failed and stopped payment without doing so), the court held, that parties to whom the goods had been sold by the vendee, and who had no notice or knowledge of the terms of the sale to their vendor, and to whom the goods were in transit by the railroad of the defendants when reclaimed by the plaintiffs, were not entitled to hold them.

In *Congor* v. *Chicago and Galena Railroad Co.*, 17 Wis.

477, the court say, "Change of ownership and payment were to be concurrent acts; and when, as in this case, payment was to be made in the notes of the vendees, we suppose it well settled that the interest does not vest until the giving of the notes."—p. 487.

We take the law to be, in every such case, that when possession is delivered before payment is made, change of ownership and payment are to be concurrent acts, whether payment is to be made in cash or by note, unless otherwise stipulated in the contract or such payment is waived by the vendor. *Warren* v. *Porter*, 2 Disney, 126, opinion of Gholson, J.; *Powell* v. *Bradlee*, 9 Gill & J. 220. And that, if payment is not so made or waived, the vendor may reclaim the goods from the vendee, or from any one claiming under him, except an innocent purchaser for value and without notice—as to which exception the authorities are not agreed; but this question does not arise in this case.

Our conclusion is, that there is no error in the charge given by the judge at the trial.

The custom testified to, if sufficiently proven, of allowing, in such sales, thirty days within which to deliver the note, can not make any difference in this case. The note was not given or tendered prior to the actual failure of, and assignment by, the plaintiffs in error. After that the defendants in error were certainly not bound to receive it.

It was earnestly insisted, by counsel for the plaintiffs in error, that the verdict of the jury is not supported by the evidence. We do not think so. The case involved questions of fraud peculiarly appropriate to be determined by the jury, and in determining which they had the right to infer the fraud "from the circumstances and conduct of the vendees, not only in respect to the sale in question, but in other contemporaneous transactions." *Hennequin* v. *Naylor*, 24 N. Y. 139.

Judgment below affirmed.