ILLINOIS TRUST & SAVINGS BANK OF CHICAGO, ILL., *v.* FIRST NAT.
BANK OF BUFFALO and another, Receiver, etc.

*(Circuit Court, N. D. New York.    March 16, 1883.)*

1. DRAFT—DEPOSIT IN BANK FOR COLLECTION—FRAUDULENT CONVERSION.

Where complainant sent a draft to a bank for collection charged with a trust
to pay the proceeds thereof when collected to complainant, the bank being in-
solvent at the time, and its officers knew of its insolvency, and that the bank
would be obliged to suspend within a day or two, and the bank received the
draft of an agent of the owner to remit the proceeds thereof, when converted
into a draft on another bank to the credit of complainant, but instead of so re-
mitting the proceeds thereof, it kept the same, and mingled the proceeds of
such draft with its own funds, *held*, that such conversion by the bank was
fraudulent, but that in an action 'by complainant for the recovery of such pro-
ceeds, it is incumbent upon the complainant to trace the fund misappropriated
into the hands of the receiver substantially appointed for the insolvent bank,
before the latter can be charged with recognizing complainant's equitable title
thereto.

2. SAME—FUNDS IN HAND OF TRUSTEE.

A *cestui que trust* cannot follow his fund into the hands of an assignee in
bankruptcy, or of an executor of such trustee, but must occupy the position of
a general creditor of the estate, unless he can identify his fund.

3. SAME—RIGHT TO FOLLOW TRUST FUND—WHEN CEASES.

The right to follow a trust fund ceases when the means of ascertainment and
identification fail, as where the subject-matter is turned into money, and mixed
and confounded in a general mass of property of the same description.

In Equity.

*Monroe & Ball,* for complainants.

*Crowley, Movius & Wilcox,* for defendant.

WALLACE, J.    The theory of this bill is that the receiver holds the
proceeds of a certain draft for $6,527.75, sent to the First National
Bank of Buffalo by complainant for collection in April, 1882, charged
with a trust to pay over the same to the complainant.

It may be assumed that the First National Bank of Buffalo was
insolvent when it received the draft for collection; that its officers
knew of the insolvency; and that the bank would be obliged to sus-
pend within a day or two; and it may be further assumed that the
bank received the draft merely as an agent to collect it of the drawers
and remit the collected proceeds, when converted into a draft on New
York, to the Bank of New York, to the credit of the complainant.
Instead of remitting the proceeds to the Bank of New York the First
National Bank of Buffalo kept them and mingled them with the gen-
eral funds of the bank, the draft having been paid in money, and the
money having been put by the bank with its other moneys indiscrim-

inately. All this took place before the bank closed its doors or any proceedings were instituted to compel it to go into liquidation. When the title of the receiver accrued assets came into his hands more than sufficient for the payment of the draft. Whether any of the moneys collected upon the draft came to the receiver's hands could not, from the nature of the case, be ascertained.

It was undoubtedly a fraudulent act on the part of the defendant bank, in its condition of hopeless insolvency, to convert the proceeds of the draft by mingling them with its own funds so that their identity was destroyed. Assuming that there was a trust relation between the complainant and the defendant bank, and not merely the relation of creditor and debtor, it is incumbent upon the complainant to trace the fund misappropriated by the defendant bank into the hands of the receiver before it can charge him with the duty of recognizing the complainant's equitable title.

There is an insuperable difficulty in doing this which must defeat the complainant's right to relief. All the moneys and assets of the defendant bank, when they were received by the receiver, came to him as a trust fund for all the creditors of the bank, without preference, subject to the prior lien of the United States, by force of the provisions of the statutes under which the receiver was appointed; and it would be a violation of law upon his part to set aside any portion of these assets for the complainant, unless its portion is capable of identification, or of being definitely traced and distinguished from the funds of the general body of creditors. A *cestui que trust*, under such circumstances, must be able to point out his fund, or the proceeds which are specifically derived from it, and trace it through its transformations so as to show that it is not a fund or product to which all other creditors have an equal right to resort. From the nature of the fund and the manner in which it was appropriated that cannot be done here. Money ordinarily has no ear-mark. It is not ordinarily the subject of replevin or detinue. "The writ lieth not for money out of a bag or chest; and so of corn out of a sack, and the like; these cannot be known from others." Co. Lit. 286*b*.

Accordingly the cases hold that if a trustee has converted a trust fund into money and mingled the proceeds with his other moneys, so that they were indistinguishable, the *cestui que trust* cannot follow his fund into the hands of an assignee in bankruptcy, or of an executor of such trustee, but must occupy the position of a general creditor of the estate. *Whitcomb* v. *Jacob*, 1 Salk. 160; *Trecothick* v. *Austin*, 4 Mason, 29; *Ex parte Mordaunt*, 3 Dea. & C. 351; *Kip* v. *Bank of*

*New York,* 10 Johns. 63; *Bank of Commerce* v. *Russel,* 2 Dill. 215; *Re Coan Manuf'g Co.* 12 N. B. R. 203; *Re Janeway,* 4 N. B. R. 100.

In Story, Eq. Jur. § 1259, the doctrine is stated thus:

"The right to follow a trust fund ceases when the means of ascertainment fail, which, of course, is the case when the subject-matter is turned into money and mixed and confounded in a general mass of property of the same description."

On the morning of the day when the defendant bank received the proceeds of complainant's draft it had cash on hand of about $40,000. It received during the day about $28,000 from depositors, and it paid out $61,000. Every dollar that was received from depositors on that day was as fraudulently taken from them as the complainant's money was from it. Each depositor has, at law, an equal right with the complainant to insist upon the repayment of the money that belongs to him; and the same right would exist in equity, except for the existence of a trust relation between the complainant and the defendant bank, which is more theoretical than substantial.

The bill is dismissed.