St. Louis & S. F. Ry. Co. *v.* Johnston, Receiver, etc.

(*Circuit Court, S. D. New York.* April 21, 1886.)

1. Banks and Banking—Collection of Draft by Insolvent Bank—Drawer, when Entitled to Proceeds.

A., who for several years had kept an account with the Marine National Bank of New York, on May 5, 1884, deposited a sight draft, dated that day, and drawn by him on a corporation of Boston, Massachusetts, which was indebted to him in the amount of the draft. The bank was insolvent at the time, but the draft was forwarded to its collection agent at Boston, and paid May 7th, after the bank had failed and closed its doors. On several previous occasions A. had deposited similar drafts, and been credited therewith as cash, and they were treated by him as cash deposits. On the occasion in question the bank credited plaintiff with the draft as a cash item. *Held,* that the draft was not the property of A. when paid by the drawee, and that he was not entitled to recover the amount thereof from the receiver.

2. Same—Credit of Sight Bill as Cash—Discount.

When a sight bill is credited by a bank to a customer as a cash item, with the latter's assent, the transaction is equivalent to a discount of the bill by the bank.

In Equity.

*Burrill, Zabriskie & Burrill,* for complainant.
*Develin & Miller,* for defendant.

Wallace, J. The proofs show that for several years prior to the fifth day of May, 1884, the plaintiff kept an account with the Marine National Bank of the City of New York, making deposits with

and drawing checks upon the bank from time to time. On the fifth day of May, 1884, the plaintiff deposited with the bank a sight draft for $17,835, dated that day, and drawn by the plaintiff upon the treasurer of the Atchison, Topeka & Santa Fe Railroad Company, of Boston, Massachusetts, which company was indebted to the plaintiff in the amount of the draft. The bank was insolvent at the time, but forwarded the draft to its collecting agent at Boston, and the amount was paid to such agent by the drawee on the seventh day of May, after the bank had failed and closed its doors. On several occasions during the time the plaintiff kept an account with the bank the plaintiff deposited similar paper at the same time with money, and the bank credited the plaintiff upon its books, and also upon the pass-book of the plaintiff, with the amount of such paper as a cash item. The plaintiff also entered the amount of such drafts in a memorandum of deposits kept in its check-book among cash items. The plaintiff has never drawn against the credits given for sight drafts, but never had occasion to do so. There was no express arrangement or understanding between the plaintiff and the bank that such deposits should be treated as cash. When the draft in suit was deposited it was sent to the bank by a messenger boy, but the plaintiff's pass-book was not sent, having previously been left with the bank for the purpose of being written up. The amount of the draft was credited by the bank on its own books to the plaintiff as a cash item, but it was not entered in the pass-book of the plaintiff until after the failure of the bank, and then without the plaintiff's knowledge. The defendant, who is the receiver of the bank, had notice of the plaintiff's rights before the proceeds of the draft were paid over to him by the collecting agent at Boston.

Inasmuch as the proceeds of the draft had not become commingled with the other moneys of the bank when the defendant took possession of its assets, but were capable of identification, the plaintiff is entitled, if they are its property, to follow them into the hands of the receiver, and regain them. *Illinois Trust & Sav. Bank* v. *Smith,* 21 Blatchf. 275; S. C. 15 Fed. Rep. 858. The question, therefore, is whether the draft belonged to the plaintiff at the time it was paid by the drawee. If it did, the defendant did not acquire title to the money. If the transaction in controversy was equivalent to a discount of the draft, the bank acquired title to the paper; if it was not, the bank merely became the agent of the plaintiff to collect the proceeds.

The case of *Metropolitan Nat. Bank* v. *Loyd,* 90 N. Y. 531, (affirming the same case in the supreme court, reported in 25 Hun, 101,) is an authority directly in point against the plaintiff's right to recover. In that case the plaintiff deposited with the bank a check drawn upon another bank in a different city, indorsed by him, and the amount of the check was entered by the bank upon the pass-book of the depositor as cash, with the depositor's knowledge. It was held that

the bank became the owner of the check. The opinions delivered in this case, both in the court of appeals and in the supreme court, are a full and able discussion of the questions involved, and contain a full review of the authorities bearing upon them. On the other hand, the case of *Balbach* v. *Frelinghuysen*, 15 Fed. Rep. 675, decided by the circuit court of the district of New Jersey, follows the views expressed in Morse on Banks and Banking, (page 427,) and holds that the checks so deposited do not become the property of the bank, although by the course of business between the depositor and the bank the depositor has been allowed to draw against the deposits before the paper has been actually collected.

Upon principle, there is no reason why, if the parties choose to treat the deposit of such paper as a deposit of cash, the transaction should not be deemed equivalent to a discount of the paper by the bank. Sight bills, drawn by one corporation upon another of prominent financial standing, like the interest coupons of such corporations, or like certified checks upon banks, are generally accepted in commercial usage as the equivalents of money. They have practically the same attributes as bills issued by banking corporations, which are merely promises to pay at sight, and are everywhere accepted as money, in the absence of special circumstances affecting the financial standing of the corporation issuing them. Where bank-bills are credited at their face to their depositor, and are treated by the depositary as a deposit of money, the bank receiving them becomes a debtor to the depositor for the face amount, although the currency may at the time be depreciated. *Marine Bank* v. *Fulton Bank*, 2 Wall. 252.

When a sight bill is deposited with a bank by a customer at the same time with money or currency, and a credit is given him by the bank for the paper just as a like credit is given for the rest of the deposit, the act evinces unequivocally the intention of the bank to treat the bill and the money or currency, without discrimination, as a deposit of cash, and to assume towards the depositor the relation of a debtor instead of a bailee of the paper. If the customer assents to such action on the part of the bank by drawing checks against the credit, or in any other way, he manifests with equal clearness his intention to be treated as a depositor of money, and, as such, as a creditor of the bank instead of a bailor of the paper. Under such circumstances it should be held that the bank acquires title to the paper just as it would to a deposit of money. The intention of the parties in the particular transaction may be ascertained from the course of their previous dealings. When it appears that it has been the uniform practice between the parties in their past dealings to treat deposits of paper as deposits of cash, their intention to do so in the particular transaction should be inferred, in the absence of new and inconsistent circumstances.

It is quite certain that bankers do not invariably credit their customers for sight paper as for cash, but are generally influenced by the financial responsibility of the customer, or the drawee of the paper,

or both. If a bank does not wish to assume the relation of a debtor for the paper to the depositor, this intention may be manifested in a very explicit manner by crediting the paper as paper. This was done in *Thompson* v. *Giles*, 2 Barn. & C. 422, in the *Case of Rowton*, 1 Rose, 15, and in the *Case of Sargeant*, Id. 153. Some significance must be attached to a credit entry of the bill upon the books of the bank as cash, and the natural implication would seem to be that the bank, by making such an entry, assumes to receive the bill as money. Correlatively, if the depositor understands that the bank proposes to receive the paper as money, and assents, expressly or by acquiescence, it would seem that he consents to part with the title to the paper. For these reasons the conclusions reached in *Metropolitan Nat. Bank* v. *Loyd* are adopted as satisfactory. The authorities bearing upon the general questions are so fully cited and discussed in the opinions in that case that it is deemed unnecessary for present purposes to refer to them.

Although the plaintiff had never drawn against the credit for bills given by the bank, it appears that its balance was so large that there was never any necessity for it to do so. There is no room to doubt that its checks would have been honored if they had been drawn. The case is therefore to be considered as one where the course of business between the parties implied the understanding of both that sight bills should be treated in their account as cash.

It is insisted for the plaintiff that the bank did not acquire title to the draft because it was insolvent, and this fact was known to its officers when the draft was delivered to it by the plaintiff. The case cannot be considered upon this theory, because there is no allegation in the bill that the officers of the bank entertained any fraudulent intention towards the plaintiff in receiving the paper, and the bill does not proceed upon such a theory. If the officers of the bank supposed the institution would be able to maintain its credit, and thus surmount its difficulties, they were under no legal duty to the plaintiff to disclose the state of its affairs. Silence with regard to a material fact, which there is no legal duty to divulge, will not vitiate a contract, although it eventually operates to the injury of the party from whom the fact is concealed. It is well settled that fraud cannot be imputed to a party who contracts an obligation knowing himself to be insolvent, merely because he omits to disclose the fact to the other contracting party. *Redington* v. *Roberts*, 25 Vt. 686; *Patton* v. *Campbell*, 70 Ill. 72; *Smith* v. *Smith*, 21 Pa. St. 367; *Nichols* v. *Pinner*, 18 N. Y. 295; *Attwood* v. *Small*, 6 Clark & F. 232.

If the bill were properly framed to present the question of fraud, the facts disclosed in the proofs might justify the conclusion that the affairs of the bank were so hopeless, and presumably known to be so to its officers, as to preclude the existence of an honest expectation on their part to repay the plaintiff's deposit; but the rule is inflexible that the decree must be *secundum allegata*.

A decree is directed dismissing the bill.