## H. & B. BEER et al. v. CHICKASHA NAT. BANK.

Circuit Court of Appeals, Eighth Circuit.
April 24, 1928.

No. 7813.

Banks and banking &#x25C8;123—Deposit of drafts pursuant to agreement to wire deposits to depositor created relationship of debtor and creditor as respected liability of bank.

Deposit of drafts to credit of brokerage partnership in accordance with agreement evidenced by letter of brokerage partnership to bank, requiring telegraph of each deposit over private wire, with confirmation by mail, and positively forbidding wire that money had been deposited until bank had ascertained checks would be paid, held, as respected liability of bank to depositor, to create relationship of debtor and creditor.

In Error to the District Court of the United States for the Western District of Oklahoma; John H. Cotteral, Judge.

Action by H. & B. Beer, a copartnership composed of Henry Beer and others, against the Chickasha National Bank. Judgment for defendant, and plaintiffs bring error. Reversed, and remanded for a new trial.

Charles Rosen, of New Orleans, La., and Frank Wells, of Oklahoma City, Okl. (D. I. Johnston, George G. Barnes, and W. C. Lee, all of Oklahoma City, Okl., and Dufour, Rosen & Kammer, of New Orleans, La., on the brief), for plaintiffs in error.

Ben Franklin and C. B. Stuart, both of Oklahoma City, Okl. (Cruce & Franklin, of Oklahoma City, Okl., on the brief), for defendant in error.

Before STONE and VAN VALKENBURGH, Circuit Judges, and KENNEDY, District Judge.

VAN VALKENBURGH, Circuit Judge.: Plaintiffs in error, a copartnership, doing business under the firm name and style of H. & B. Beer, at New Orleans, La., hereinafter called plaintiffs, brought suit in the District Court of the United States for the Western District of Oklahoma against defendant in error, a national banking corporation, doing business at Chickasha in the state of Oklahoma, hereinafter called defendant, to recover an alleged balance on deposit with defendant. The statement of account incorporated in the petition showed a balance in favor of plaintiffs of $8,396.13, for which recovery was prayed. The attitude of the defendant bank is best disclosed by its answer, to wit:

"Defendant denies all and singular the allegations contained in the petition herein filed, and asks for strict proof of same.

"For further answer herein, defendant says that during the years 1924, 1925, and 1926 the plaintiff H. & B. Beer was engaged in what is termed the brokerage business, which means, among other things, that the said plaintiff was engaged in the sale of cotton futures and grain futures throughout different parts of the country; that at the same time one C. F. Avery was engaged in the same character of business in Oklahoma City and throughout other portions of the state of Oklahoma, and at the (at the) same time one Paul James was engaged in gambling in cotton and grain futures through said Avery and H. & B. Beer, plaintiff herein; that at and during said time C. F. Avery had a duly appointed and acting agent by the name of C. E. McGugan; that the method of operation adopted by said Avery and said Beer was for said Avery to find a buyer for cotton or grain futures, draw draft through the defendant's bank on said buyer for the amount of money necessary to purchase the futures contracted for, and that said draft or drafts were always drawn by C. F. Avery, per C. E. McGugan, his agent, on the person who had undertaken to purchase said futures or to furnish money to buy said futures; that during the years 1924 and 1925 many drafts of this character were drawn through defendant's bank on different persons; that each time a draft was drawn for the purposes aforesaid, the said McGugan, acting for said Avery, who, defendant alleges, was the agent of the said plaintiff in all these transactions, would and did represent to the defendant that the draft so drawn was good and would be paid promptly when presented to the person and bank on whom and which it was drawn.

"Defendant further alleges that on or about September 21, 1925, said Avery aforesaid, by said McGugan, drew a draft on one Paul James for $7,000, which draft was accepted by the defendant as a cash item, and the sum of $7,000 was placed to the credit of said plaintiff herein in the bank of defendant; that on the very next day, or the afternoon of the said day that said $7,000 draft was drawn, defendant learned that the draft was protested and would not be paid, and defendant, through its cashier, Roy Smith, then and there notified McGugan, the agent of Avery as aforesaid, that no more drafts would be honored on Jaul James, the person on whom said $7,000 draft was drawn; that the said McGugan was notified that the said James had been found to be unreliable and unable to pay this draft, and said McGugan was told not to attempt to put any other drafts through the bank on said James; that on the next day, that is, on the 22d day of September, 1925, another draft was drawn by C. F. Avery, through C. E. McGugan, on Paul James, First National Bank of Alex, Okl., payable to the order of the Chickasha National Bank for $6,000; that without the knowledge of the cashier as aforesaid, who had notified McGugan not to draw any more drafts and that they would not be honored if drawn, said McGugan induced one Foster who was an employee of the bank, to accept said $6,000 draft as a cash item, and said McGugan obtained from said Foster, on behalf of the Chickasha National Bank, a telegram to the plaintiff that said $6,000 had been deposited to the credit of plaintiff. Defendant says that as soon as the bank, through its cashier aforesaid, found out that said telegram had been sent, the defendant bank wired to the plaintiff in New Orleans that the $6,000 deposit as indicated by the wire aforesaid was a mistake, that it was an error, and that there was no deposit of $6,000 in said bank. Defendant says that said $6,000 was never carried upon the books of the bank as a deposit, and never entered on said books as a deposit in favor of the plaintiff herein; that neither the $7,000 draft aforesaid, nor the $6,000 draft aforesaid, was ever paid by said James; that defendant was caused to accept said $7,000 and to wire plaintiff in regard thereto, as above set forth, by the fraudulent misrepresentations of the said McGugan, acting as agent for plaintiff, that said draft was good and would be paid when presented, when the said McGugan well knew that same was not good and would not be paid. Defendant says that the telegram sent the plaintiff as aforesaid, that $6,000

was on deposit, was an error, a mistake, and that said mistake was brought about through the false representation of said McGugan as aforesaid, who had been advised by the cashier of the bank as aforesaid that said $6,000 draft would not be accepted as a cash deposit, and that said McGugan concealed this matter and this direction from the cashier of the bank, from said Foster, who sent the telegram as aforesaid that $6,000 had been deposited to the credit of the plaintiff. Defendant says that it received no consideration whatever for the business of the plaintiff during these transactions, and that it acted purely as a matter of accommodation to the plaintiff herein; that it, at all times as indicated aforesaid, when said drafts were drawn by Avery through McGugan, accepted McGugan's statements that the drafts were absolutely good and would be paid, and defendant would never have passed any of the drafts so drawn by Avery through McGugan to the credit of the plaintiff as a cash item if it had not believed and relied upon the representation by said McGugan that the same would be paid when presented to the drawee; that during all these transactions the said Avery and his agent, McGugan, were acting for the said plaintiff; that they were negotiating the sales on futures for said plaintiff, and were, in every sense, the agent of the plaintiff in finding purchasers and in securing, through drafts aforesaid, the money from said purchasers for said plaintiff. Defendant furthermore alleges that the plaintiff herein knew and was advised each time by said Avery or McGugan as to the person who was making the purchase of futures, that to the amount of money said purchaser was to furnish, and that plaintiff knew and understood that the money obtained by said Avery and McGugan from the purchaser was to be placed in the defendant bank for the purpose of securing the plaintiff against any loss which it might suffer by reason of the purchase by plaintiff of futures for the particular person against whom said drafts aforesaid were drawn.

"Defendant further says that the said Avery and the said McGugan knew the very day the $7,000 draft aforesaid was drawn on James that the same had been dishonored, and knew that the $6,000 draft drawn the next day on said James would be dishonored, and yet, notwithstanding this fact, said Avery and McGugan advised their principal, the plaintiff herein, that said drafts had been paid and that the money was actually on deposit for the plaintiff, thereby practicing a fraud upon this defendant. Therefore defendant says that it is not, or it ought not, to be held liable to pay plaintiff herein said draft of $7,000, or any portion thereof, and said draft of $6,000, or any portion thereof; that said sums of money never reached the defendant's bank.

Defendant denies that it is indebted to plaintiff in the sum of $8,396.13, or any other sum, but says that, by reason of the matters above set forth in this answer, said plaintiff has an overdraft at this defendant's bank in the sum of $4,605.47, and, by reason of the premises, is indebted to this defendant in said sum of $4,605.47."

The reply of plaintiffs put in issue all the allegations of the amended answer which in any way tended to controvert the allegations of the petition.

To shorten the case, it was stipulated that the only substantial matters involved were as to the credit claimed of $7,000 on September 21st and that of $6,000 on September 22d. It was agreed that, if plaintiffs were entitled to those credits, they were likewise entitled to judgment as prayed, and, if not so entitled to either of those credits, the defendant might have judgment as prayed in its answer. The statement of account incorporated in the petition was otherwise conceded to be correct.

At the trial, plaintiffs introduced their letter to defendant of September 3, 1924, as the basis upon which the business between plaintiffs and defendant was conducted, and as establishing the nature of the deposits made, to recover the balance of which the action was brought. That letter is in the words and figures following:

"September 3, 1924.

"Chickasha National Bank, Chickasha, Okla.—Dear Sir: As per request of Mr. C. F. Avery, Chickasha, Okla., we herewith enclose copy of our private office code, in which please telegraph us promptly, over the private wire, as each deposit is made for our credit; and make no disbursements on telegrams over our signature not in this code. Please note that is for use only in connection with business between Mr. Avery, his clients and ourselves. If any one else should present a telegraphic order in these ciphers, please do not pay until you have wired us and received confirmation over the public wire.

"Kindly confirm by mail, and in plain language always, each deposit and each disbursement, avoiding the use of ciphers in letters, so not to subtract from the privacy in which we beg you, in your own interest and ours, to preserve this code.

"We also wish to call your attention to

the fact that we positively do not want to be wired that money has been deposited to our credit until after you have ascertained that the checks deposited with you will be paid.

"With thanks for an early acknowledgment and kind attention,

"Yours very truly.

enclosure.

w."

Plaintiffs proved that they were a partnership, doing a commercial brokerage business at New Orleans; that Avery was likewise engaged in the brokerage business at Chickasha, and at other places; that McGugan was in charge of Avery's Chickasha office, which was connected by a private wire with that of plaintiffs at New Orleans; that long prior to the deposit of the two drafts, which form the substance of this controversy, defendant had received the letter above set out and had acted in strict accordance with its terms; that the two James drafts for $7,000 and $6,000, respectively, had been accepted by defendant, and the telegraphic notification required by the terms of that letter had been made to plaintiffs; that the bank had given duplicate deposit slips at the time the drafts were taken by it. The telegrams notifying plaintiffs of the deposits made were sent on September 21st and 22d, respectively. Acting upon the information thus conveyed, plaintiffs on the 21st made "telegraphic transfer account James of $6,300," and on the 22d a like telegraphic transfer of $5,700. The telegram concerning the $7,000 item was confirmed by letter, which has an important bearing upon the nature of the deposits as viewed by the bank, to wit:

"Chickasha, Okla., 9—21—25.

"H. and B. Beer, New Orleans, La.—Gentlemen: We beg to herewith confirm our telegram to you of even date as follows: 'C. F. Avery has deposited to your credit seven thousand dollars account Paul James.'

"Yours very truly,

"C. W. Foster, Asst. Cashier."

Having made these proofs in chief, plaintiffs rested. Thereupon, counsel for defendant moved the court to instruct the jury to return a verdict in its behalf. The court indicated its purpose to sustain the motion upon the stated grounds that in its opinion the remedy of the plaintiffs was for breach of contract in failing to ascertain that the drafts in question would be paid before advising plaintiffs of the deposits, and that plaintiffs had failed to prove their damages. Thereupon counsel for plaintiffs asked leave to reopen the case and introduce further testimony. This was denied. Counsel then asked permission to dismiss without prejudice. This also was denied, and the jury was instructed to return a verdict for the defendant.

The rules governing the relationship between a bank and its depositors have received much consideration from courts of last resort. In Burton v. United States, 196 U. S. 283, 25 S. Ct. 243, 49 L. Ed. 482, the Supreme Court said:

"The deposit of checks in a bank and drawing against them by a customer constitutes the relation of debtor and creditor and the bank becomes the absolute 'owner of the checks so deposited, and not the agent of the customer to collect them; this relation is not, in the absence of any special agreement, affected by the right of the bank against the customer, and his liability therefor, in case the checks are not paid."

See, also, American National Bank of Nashville, Tenn., v. Miller, 229 U. S. 517, 33 S. Ct. 883, 57 L. Ed. 1310. This court, in Security National Bank of Sioux City, Iowa, v. Old National Bank of Battle Creek, Mich., 241 F. 1, has covered the subject with great completeness. It there held that:

"A depositor and his depository bank may make a valid agreement that checks and drafts on other banks, which he deposits and the bank places to his credit, shall immediately become the absolute property of the bank, or that the bank shall hold them and continue the credit to him for them only on condition that they are paid in the regular course of business.

"But a customer of a bank, who deposits checks or drafts upon other banks with his bank, which gives him credit therefor in his general account, which is subject to check, thereby transfers the title to the checks or drafts to the bank, and renders it his debtor to the amount credited to him therefor, in the absence of an agreement to the contrary."

In the course of its opinion, the court adopted the opinion of Judge Booth, which contains an exhaustive review of the law applicable. Further instructive pronouncements to the same effect are to be found in the following cases: St. Louis & S. F. R. Co. v. Johnston (C. C.) 27 F. 243, 245; Metropolitan Nat. Bank v. Lloyd, 90 N. Y. 530, 535; Cragie v. Hadley, 99 N. Y. 131, 133, 1 N. E. 537; Arkansas Trust & Banking Co. v. Bishop, 119 Ark. 373, 178 S. W. 422, 423; Morse on Banks and Banking (5th Ed.) vol. 1, § 289, p. 545.

Our judgment is that the effect of the letter of September 3d, and of the acceptance and interpretation thereof, evidenced by the

course of dealing which ensued between plaintiffs and defendant, was to place the bank in the position of having accepted these controverted items as deposits without qualification; in which case, the relationship of debtor and creditor was established between the bank and the depositor within the rule announced in the cases cited. It was shown that plaintiffs relied upon the telegraphic notifications from the bank, and paid out $12,-000 on the faith of these deposits. It is true that it paid this sum in connection with the same transactions upon which the deposits were made, but this was not necessarily contemplated by plaintiffs in requiring positive assurance that the deposits stood to its credit in the defendant bank. Plaintiffs were brokers engaged in general dealings of the same nature. It is not to be supposed that in all cases moneys standing to their credit in the bank were to be applied to specific uses. They undoubtedly wished to depend upon such bank balances for use in general transactions. We cannot look beyond the instructions given and accepted and the relationship thereby established. As matters stood at the close of plaintiffs' evidence, a plain case of deposits creating the relationship of debtor and creditor was established, and therefore the directed verdict, in the absence of any defense made, was not justified. The contention of defendant that fraud was committed, that Avery and McGugan were agents of plaintiffs, and that plaintiffs were bound by their acts, was not before the court. In fact, none of the defenses set up in the answer were in any wise established. Plaintiffs had made out a prima facie case sufficient to put the defendant to its proofs.

It follows that the court erred in sustaining the motion for a directed verdict, and that the judgment should be reversed, and the case remanded for a new trial. It is so ordered.