## FOSTER, RECEIVER, ETC., v. RINCKER.

BANKS—RECEIVER—COLLECTION OF NOTE—TRUST FUNDS—AGENCY.

1. The relation existing between the owner of a note and a bank with which it is left for collection is that of principal and agent.

2. Upon collecting the note the bank does not discharge its duty and obligation to its principal by drawing a draft upon another bank to cover the proceeds of the collection, and mailing the same to the owner of the note. The obligation to pay over such proceeds, in case a draft is drawn therefor, is not discharged until the actual payment of the draft.

3. The proceeds of the collection are the property of the owner of the note, and the bank cannot by its own unauthorized act transform the relation of principal and agent into that of debtor and creditor.

4. The receiver of the bank upon insolvency acquires no better title to the money than the bank had, and the same may be followed into his hands as a trust fund and recovered from him by the owner of the note.

5. Equity will follow a fund through any number of transmutations and preserve it for the beneficial owner, so long as it can be identified.

6. The proceeds being directly traced into the hands of the receiver they may be recovered notwithstanding that they were a part only of a larger amount received by him.

7. The right in such case to recover from the receiver is not affected by the statute of the United States prohibiting any disposition of the assets of an insolvent national bank with a view to prevent the proper application thereof. (Sec. 5242, Rev. Stat. U. S.)

[Commenced in District Court May 9, 1893—Decided Jan. 16, 1894.]

ERROR to District Court for Laramie County. HON. RICHARD H. SCOTT, Judge.

Action by Herman C. Rincker against Joel Ware Foster, as receiver of the Cheyenne National Bank, to recover the proceeds of a note left with the said bank for collection, and col-

lected by it before its insolvency. The prayer of the petition was that the amount be declared a trust fund, and that the receiver be ordered to pay the same to the plaintiff. Judgment was rendered in favor of the plaintiff and the receiver instituted proceedings in error. The facts are stated in the opinion.

*B. F. Fowler* and *Baird & Churchill*, for plaintiff in error.

The obligation of the drawer of a draft or maker of a check is that the drawee will accept and pay the bill. (Daniels Neg. Instr., Sec. 898; Randolph Com. Paper, Sec. 122; Tiedeman Com. Paper, Sec. 507.) Such liability is to be determined by the law of the place where the draft was made (Randolph, Sec. 21; Tiedeman, Sec. 507). In Wyoming the liability is the same as the first indorser of other negotiable instruments (L. 1888, p. 154). The liability is therefore contingent by way of guaranty until dishonor. (Randolph, 1136, 122, 739; Daniels, 898; Tiedeman, 507.) Dishonor arising after failure of the bank, no trust is created after its failure (Venango Nat'l B'k v. Taylor, 56 Pa. St., 14; Sec. 5242, R. S. U. S.). In Wyoming, by statute, a check after presentment is an assignment pro tanto of the deposit. In the absence of pleading to the contrary it must be assumed that the rule of law is the same in Nebraska (Sutherland Stat. Const., p. 248; Bank v. Lambert, 4 Rob., 463; State v. Cross, 68 Ia., 180; Hickman v. Alpaugh, 21 Cal., 225; Walsh v. Dart, 12 Wis., 635; Ellis v. Maxon, 19 Mich., 186; Savage v. O'Neill, 44 N. Y., 298; Lucas v. Laden, 28 Mo., 342; Connolly v. Riley, 25 Md., 402; Green v. Rugely, 23 Tex., 539; Hall v. Pillow, 31 Ark., 32; Territt v. Woodruff, 19 Vt., 182). The check issued by the bank to plaintiff was presented after the act of insolvency on the part of the Cheyenne bank. Assignments after insolvency are prohibited on the part of national banks. (U. S. Rev. Stat., Sec. 5242; Bank v. Colby, 21 Wall., 609.) Where funds assigned by check are paid over to the maker, their identity becomes lost and cannot be followed. (Row v. Dawson, 1 Ves. Sr., 331; Cowperthwaite v. Sheffield, 3 Comst., 243.) The bank terminated its trust

relations with respect to the collection by issuing a draft upon a debtor bank, because the proceeds were mingled with other assets of the bank. (Phila. N. B'k v. Dowd, 38 Fed., 172; Merchants &c. Bank v. Austin, 48 Fed., 25.) The funds must be traced or a trust will not arise. (Com'l &c. Bank v. Armstrong, 39 Fed., 692; Franklin Co. Bank v. Beal, 49 Fed., 606; Overseers v. Bank, 2 Gratt., 544; Whitley v. Foy, 6 Jones Eq., 34; Thompson v. Perkins, 3 Mason, 232; Kip v. Bank, 10 Johns., 63; Van Alen v. Bank, 52 N. Y., 1; Bank v. King, 57 Pa. St., 202; Cook v. Tullis, 18 Wall, 332; Schuler v. Bank, 27 Fed., 424; Bank v. Ins. Co., 104 U. S., 54; Cavin v. Gleason, 105 N. Y., 256; Anheuser-Busch &c. v. Clayton, 56 Fed., 759, and cases cited; First N. Bank v. Armstrong, 42 Fed., 193).

*W. H. Fanning* and *Potter & Burke,* for defendant in error.

A claim sent to a bank for collection establishes as between the sender and the bank the relation of principal and agent. The receiver of the bank acquires no better or different title to the moneys coming into his hands as such than that which the bank had. (Gluck & Becker, p. 193; Casey v. Society, 2 Woods, 77; Cutting v. Damerel, 88 N. Y., 410; Lincoln v. Fitch, 42 Me., 456; Butterworth v. O'Brien, 23 N. Y., 275; Nat'l Ex. Bank v. Beale, 50 Fed., 355; and 55 Fed., 894.) Money received by a bank as the proceeds of a collection constitutes a trust fund, and can be recovered from the receiver even though it may have become mingled with the general funds of the bank. (McLeod v. Evans, 66 Wis., 401; Francis v. Evans, 69, id., 115; Bowers v. Evans, 71 id., 133; Peak v. Ellicott, 30 Kan., 156; Ellicott v. Barnes, 31, id., 170; Meyers v. Board &c., 32 Pac., 661 (Kan.); Nurse v. Satterlee, 81 Ia., 491; Griffin v. Chase, 54 N. W. (Neb), 572; M'f'g Nat'l Bank v. Continental Bank, 148 Mass., 553; Continental Bank v. Weems, 69 Tex., 489; Kinney v. Paine, 68 Miss., 258; People v. City &c., 96 N. Y., 35; In re Blanc, 14 Hun., 8; People v. Bank, 39, id., 187; McCall v. Fraser, 40, id., 113; Thompson v. Bank, 8 Atl., 97; First Nat. Bank v. Armstrong, 36 Fed., 59; First Nat. Bank v. Hummell, 23

Pac., 896, and 32 Pac., 72 (Colo.); San Diego Co. v. Cal. Nat. Bank, 52 Fed., 62; In re Armstrong, 33 Fed., 405; Fifth Nat. Bank v. Armstrong, 40, id., 46; Peters v. Bain, 133 U. S., 670; Nat. Bank v. Ins. Co., 104 U. S., 54; Grimes v. Cannell, 23 Neb., 189.) Money received by one standing in a fiduciary relation to the owner and by him placed in a special fund can be recovered wherever found, if it has not passed to an innocent purchaser for a valuable consideration. (Farmers &c. Bank v. King, 57 Pa., 202; and cases cited above.) The drawing and delivery of a draft is an assignment of so much of the funds upon which it is drawn as the draft calls for. (Fonner v. Smith, 31 Neb., 107; 4th Nat. Bank v. City Nat. Bank, 68 Ill., 398; Ridgely v. Patton, 109, id., 479; Union Nat. Bank v. Bank, 80, id., 212.) The money upon which the draft was drawn being in Nebraska, the law of that state must govern. (Nat. Bank of Am. v. Ind. Banking Co., 2 N. E., 401.) The proper remedy is pursued (Nat. Bank v. Ins. Co., 104 U. S., 66; People v. Bank, 39 Hun., 187; McAllister v. Fraser, 40 id., 113; People v. Bank, 96 N. Y., 33). An abuse of a trust can confer no right upon the party abusing it, or those in privity with him (2 Story Eq. Jur., 1258; Snell's Jur., 155).

Counsel for plaintiff in error in reply contended that the draft issued by the collecting bank to the owner of the note constituted a payment and cited in addition Taylor v. Williams, 11 Metc., 44.

CLARK, JUSTICE.

This was an action brought in the court below by defendant in error in which he sought a decree declaring certain funds which came into the possession of plaintiff in error, trust funds, and ordering that they be paid over by plaintiff in error to him with interest. To the petition of plaintiff below the defendant there interposed a general demurrer. The demurrer was overruled and defendant below electing to stand by his demurrer, proofs were offered sustaining the allegations of the petition, findings of fact made by the court and a decree entered as follows:

"It is therefore considered, ordered, adjudged and decreed
"that of the sum of sixteen hundred and thirty-five dollars
"collected by the Cheyenne National Bank for the plaintiff
"as aforesaid, sixteen hundred and thirty-four dollars there-
"of is a trust fund, and that the defendant, as receiver of the
"Cheyenne National Bank be, and he is hereby directed and
"ordered to pay to the plaintiff, out of any moneys in his
"hands, or should there not be sufficient funds in his hands
"at this time, then out of the first moneys received by him as
"such receiver, the full sum of twelve hundred and fourteen
"and forty-six one-hundredths dollars ($1,214.46) and to the
"clerk of this court the costs of this suit, taxed at $6.50."

Thereafter motion for a new trial was filed and upon hear-
ing was overruled. Exceptions were duly reserved by de-
fendant below to all the rulings, orders and decree of the trial
court, and the cause came here upon the record setting forth
the petition, demurrer, and ruling thereon, the findings of
fact, decree, motion for new trial and ruling thereon.

Without setting forth in hæc verba the petition or findings
of fact made by the court below, the facts disclosed by the
record are substantially as follows:

On the 11th day of November, 1891, The Cheyenne Na-
tional Bank was and for some time prior thereto had been
a banking corporation, organized under the national banking
laws of the United States, and was located at and carrying on
its business of banking at Cheyenne, Wyoming, and so con-
tinued until it ceased to do business on the 13th day of
November, 1891, as hereinafter stated. On the first named
day, November 11, 1891, it held for collection for plaintiff
below the note of one Charles F. Coffee, payable to the order
of said plaintiff and upon which there was due on the said
day the sum of $1,635.00. The note was received by the bank
solely for collection, and was at all times until paid the
property of the plaintiff below. On said day, November 11,
1891, Coffee paid to the bank the amount due upon the note,
to wit: $1,635.00, giving to the bank in payment thereof a
draft drawn by the Commercial National Bank of Har-
rison, Nebraska, upon the United States National Bank

of Omaha, Nebraska, for said sum. On the same day the Cheyenne National Bank remitted the said draft to the First National Bank of Omaha, Nebraska, with instructions to collect and credit to the account of the Cheyenne National; and at the same time it (the Cheyenne National) forwarded by mail to the plaintiff below at Crawford, Nebraska, its draft upon the First National Bank of Omaha for the sum of $1,634.00, being the net proceeds of the collection. While it is not so stated in the pleadings or in the findings of fact, it is evident from the facts which are stated, and was admitted upon the argument, that the difference, viz.: one dollar, between the amount collected and the amount remitted to plaintiff below, was the charge made by the Cheyenne National Bank for the collection and remittance. At the time of drawing the said draft for $1,634.00 the Cheyenne National Bank had to its credit with the First National Bank of Omaha a sum of money largely in excess of the amount of said draft, and such continued to be the case until the funds to the credit of the Cheyenne National Bank were paid over to the receiver, the plaintiff in error, by the Omaha bank as hereinafter stated.

On the 13th day of November, 1891, the draft for $1,635.00, which the Cheyenne National Bank accepted in payment of said note, was collected by the First National Bank of Omaha, and the amount so collected was by it placed to the credit of the Cheyenne National Bank on said date, and said amount, quoting from the petition, "so received and credited "by the First National Bank of Omaha, remained with it until "on or about the 15th day of February, 1892, when the same, "with other funds also standing to the credit of the Cheyenne "National Bank were turned over to the defendant as receiver "of the said Cheyenne National Bank." :

The draft for $1,634.00 sent by mail to the plaintiff below by the Cheyenne National Bank in discharge of the collection was received by him at Crawford, Nebraska, on the 13th day of November, 1891, and at once forwarded by him to Omaha, Nebraska, for collection; it was presented to the First National Bank of Omaha, and payment demanded on the 17th

day of November, 1891, and although at that time that bank held to the credit of the Cheyenne National Bank a sum largely in excess of the amount of the draft, of which sum the proceeds of the draft given in payment of the note was a part; payment was refused and the draft was duly protested.

On the 13th day of November, 1891, the Cheyenne National Bank failed, closed its doors and ceased to do business. On the 5th day of December, 1891, the defendant below was duly appointed receiver of the Cheyenne National Bank, and on December 15th, 1891, he duly qualified as such receiver, and ever since has been and now is such receiver. On the 15th day of February, 1892, the said receiver demanded and received from the First National Bank of Omaha the sum of $8,727.40, being the amount on deposit in said bank to the credit of the Cheyenne National Bank, which said sum included the money, $1,635.00, collected upon the draft given the Cheyenne National Bank in payment of the note as before stated. On the 3rd day of March, 1892, the receiver paid to plaintiff below on account of his demand the sum of $409.13, and on the 29th day of December, 1892, the further sum of $245.47, leaving the balance sued for. Under these facts it is contended on the one hand that the receiver received the money from the Omaha National Bank, charged with a trust in favor of plaintiff below and that therefor the latter is entitled to be paid in full out of the funds in his hands as such receiver; on the other hand, it is contended that the plaintiff below is simply a general creditor of the bank and must pro rate with all the other general creditors in the distribution of its assets.

It may be observed at the outset that it would be hard· to conceive of a case in which the proceeds of a collection could be more completely and thoroughly traced into the hands of the receiver of an insolvent bank than is done in this case. The note was paid by draft, that draft was sent by the collecting agent to a bank at Omaha, that bank collected the draft on the day that the collecting agent failed, it placed the proceeds to the credit of the collecting agent, the insolvent bank, and afterwards turned those proceeds·

over to the receiver, the plaintiff in error here. Such are the facts disclosed by the petition, such are the facts expressly found by the court, and I am utterly unable to understand how under any of the authorities the judgment of the court below could have been at all different from what it was.

· It is evident from the fact that as soon as the bank collected the note it on the same day attempted to remit the proceeds to the owner thereof; that there was no sort of understanding between him and the bank that the bank should for any length of time have the right to use the proceeds or that there should be any other relation between them than simply that of owner and collecting agent.

When the bank consented to act as the collecting agent and charged for the collection, it assumed precisely the same duties and obligations toward the owner of the note, its principal, as an individual acting in the same capacity would have done. The relation existing between the parties was that of principal and agent; and this being so, the proceeds of the note collected by the agent were just as much the property of the principal as the note itself was. The title thereto never vested in the agent, never passed from the principal; and upon making the collection it at once became the duty of the agent to send the proceeds thereof to its principal. Whether within the limits of its agency it was authorized to make the remittance by means of its own draft drawn upon its correspondent at Omaha is a matter concerning which there is some conflict of opinion among the authorities, and as to this particular matter we express no opinion; it is not necessary to do so, because however this question may be decided we are very clear that the bank did not by the acts of drawing and mailing this draft thereby discharge its duty and its obligation to its principal. That could only be done by the actual payment of the draft, because until it was paid the title to the proceeds remained in the owner of the note and the transaction would not amount to a remittance. To hold otherwise would be tantamount to saying that the title to these proceeds might pass from the owner without his consent or knowledge. It does not appear that any particular mode of making the re-

mittance was mentioned between the parties, but this does not alter the case; the bank could not by its own act, unauthorized by the owner of the note, transform the relation of principal and agent existing between it and the owner of the note, into the relation of debtor and creditor, and thus change its duty, obligation and liability to the owner and at the same time change and modify the rights and remedies of the principal naturally growing out of the true relation actually existing between the parties.    People v. Bank of Dansville, 39 Hun., 187; Bolles on Banks and Depositors, Secs. 66 and 475; Nurse v. Satterlee, 46 N.·W. Rep., 1103; Libby v. Hopkins, 104 U. S., 309; Dime Savings Insn. v. Allentown Bank, 65 Pa. St., 116.

It follows from what has been said that the bank was merely the bailee for hire of Mr. Rincker's funds.   Bolles on Banks, etc., page 487; Anheuser-Busch Brewing Ass'n v. Clayton, 56 Fed. Rep., 759.   And this being so he, the plaintiff below can follow them certainly into the hands of the receiver, who acquired no better title to the money than the bank had; and this is so for the simple reason that it is his money, the title to which has never passed from him.

The relationship of principal and agent which existed between these parties was certainly one of trust and confidence; in other words, it was a fiduciary relationship, and this being so, it was one in which if a wrong arise the same remedy exists against the wrongdoer on behalf of the principal as would exist against a trustee on behalf of the cestui que trust, and it follows that whenever such relationship exists and money coming from the trust lies in the hands of persons standing in that relationship, it can be followed and separated from any money of their own.   National Bank Ins. v. Ins. Co., 104 U. S., at p. 68.   It cannot be denied that equity will follow a fund through any number of transmutations, and preserve it for the beneficial owner so long as it can be identified. In this case there is no kind of difficulty whatever about the identification of the fund.   The proceeds of the collection are directly traced into the hands of the receiver; it is true that when these proceeds came into his hands they came along

with other funds, the whole amount received by him from the First National Bank of Omaha being $8,727.40, but this fact does not affect the case because equity will follow the money even if put into a bag or an undistinguishable mass, by taking out the same quantity. National Bank v. Insurance Co., 104 U. S., 55; Commercial Bank v. Armstrong, 148 U. S., 50; Peters v. Bain, 10 Sup. Ct. Rep., 361; McLeod v. Evans (Wis.), 28 N. W. Rep., 173; Francis v. Evans (Wis.), 33 N. W. Rep., 93; Bowers v. Evans (Wis.), 36 N. W. Rep., 629; Ellicott v. Barnes (Kas.), 1 Pac. Rep., 767; Peak v. Ellicott (Kas.), 1 Pac. Rep., 501; Meyers v. Board of Education (Kas.), 32 Pac. Rep., 661; Bank v. Hummell (Colo.), 23 Pac. Rep., 986; Nurse v. Satterlee (Iowa), 46 N. W. Rep., 1102; Griffin v. Chase (Neb.), 54 N. W. Rep., 572; Bank v. Weems (Tex.), 6 S. W. Rep., 802; Thompson v. Gloucester City Savings Ins. (N. J.), 8 Atlantic, 97; People v. Bank of Rochester, 96 N. Y., 35; In re Julius Le Blanc, 14 Hun., 8; McColl v. Fraser, 40 Hun., 112; Libby v. Hopkins, 104 U. S., p. 309; First National Bank v. Armstrong, 36 Fed. Rep., 59; In re Armstrong, 33 Fed. Rep., 405; Farmers & Mer. Nat. Bank v. King, 57 Pa. St., 202.

At the argument it was urged upon us that Sec. 5242, R. S. U. S., prohibiting any disposition of the assets of a national bank after an act of insolvency, with a view to prevent the application of its assets in the manner provided by the U. S. Statutes controls this case. We do not assent to this proposition, because in our opinion the proceeds of the collection of the note were never at any time the property of the bank and consequently not a portion of its assets, and hence wholly unaffected by the statute.

The decree of the district court of Laramie county is in all respects affirmed.

Groesbeck, C. J., and Conaway, J., concur.