## WALLACE v. STONE.

1. PAYMENT—EVIDENCE.

   Evidence reviewed, and *held* to prove that a mortgage was paid to a bank in cash, rather than by a surrender of certificates of deposit. HOOKER and MONTGOMERY, JJ., dissenting.

2. BANKS—INSOLVENCY—PREFERENCES—TRUSTS—INTERMINGLING OF FUNDS.

   Where paper is sent to a bank with instructions to collect and remit, moneys received by the bank thereon are held by it in trust, and the relation of debtor and creditor is not created between it and the owner of the paper; and if the bank mingles the money so received with its own funds, and becomes insolvent before remitting to the *cestui que trust,* the latter is entitled to a lien upon the fund in the hands of the receiver, superior to the claims of general creditors. *In re Johnson,* 103 Mich. 109, followed.

   *It seems* that in such case, where the fund coming to the possession of the receiver is largely in excess of the amount so held in trust, it is not incumbent upon the *cestui que trust* to prove that, at no time after the creation of the trust, were the bank funds reduced to an amount less than that of the trust fund.

3. SAME—ESTOPPEL.

   The acceptance of a dividend from the receiver of an insolvent bank does not estop the claimant from demanding payment of his claim in full, on the ground that a trust should be imposed upon the assets of the bank in his favor.

Appeal from Ingham; Person, J.  Submitted June 11, 1895.  Decided December 3, 1895.

Petition of Julia Wallace for an order requiring George W. Stone, as receiver of the Central Michigan Savings Bank, to pay the claim of petitioner in full, in preference to general creditors.  From an order granting the petition, respondent appeals.  Affirmed.

The opinion of the circuit judge, after stating the facts of the case, concluded as follows:

"It is well settled in equity that a creditor shall have a lien upon the whole mass, when funds held in trust for him have been mingled by the trustee with the trustee's own funds. It is also well settled that, if a trustee draws from such mingled funds, he will be held to have first drawn his own funds, rather than the funds of another, in violation of law and duty. The money collected for Mrs. Wallace, and held in trust for her by the bank, went into the bank's funds; and of such funds some $10,000 remained, and passed into the receiver's hands. Mrs. Wallace's money must be held included therein, and should be paid over to her by the receiver."

*Cahill & Ostrander*, for petitioner.

*M. V. & R. A. Montgomery*, for respondent.

McGRATH, C. J. On the 26th day of January, 1893, Mrs. Glasier deposited with the defendant bank $261, and took a certificate of deposit for $65, and a cashier's check for $196. On February 7, 1893, a bank at Oklahoma sent to defendant bank a note and mortgage executed by Mrs. Glasier, and payable to Julia Wallace, of Oklahoma, with instructions to collect and remit the interest due, and any portion of the principal which the mortgagor might wish to pay. On February 14, 1893, Mrs. Glasier called at the bank, surrendered the certificate of deposit and the cashier's check and a  tax receipt, and made payment of $196 of interest, and $100 of principal, on the aforesaid note and mortgage, and received receipts therefor, signed "Julia Wallace, by Nelson Bradley, Cashier," etc. The amounts were afterwards indorsed on the note. Some correspondence was had between the bank and Julia Wallace with reference to the reception of the tax receipt, and the matter was delayed. Mrs. Wallace finally consented to a credit for the taxes paid, but, before the bank forwarded the money, the bank suspended, and went into the hands of a receiver. Mrs. Wallace now files her petition, claiming that the bank received the said moneys in trust for her, and

that she should have preference over general creditors. The court below granted the prayer of her petition, and the matter comes here on appeal. The petitioner made proof of claim, and received a dividend.

The first question presented is one of fact, viz.: Did Mrs. Glasier, on the 14th day of February, obtain from the bank the currency upon the certificates, and pay the same over to the bank? She stated to her sister her business at the bank, and requested her to go with Mr. Dolan, a justice of the peace, and herself, to the bank. It is evident that she went to the bank before the other parties reached there. Her sister testifies as follows:

"I telephoned over to Mr. Dolan, and asked if she was there, and he said she was, and I went over there to meet her, but she had gone out, and gone to the bank; and I went up to the bank, and Mr. Dolan and myself were both there. Mr. Dolan counted over the money, and it was paid, and she received a receipt from Mr. Bradley, the cashier, and asked him if that amount was indorsed on the mortgage, and he said it was, and gave her a receipt for the amount."

Again, when asked on cross-examination if she saw her pay over the money, she says:

"I saw her; yes, sir. Saw her pay bills. I think Mr. Dolan counted over the money, and I remember some remark being made about the money, that he counted over the money, and, I think, handed it to her, or else he stood right by her, and handed it to Mr. Bradley."

Mr. Dolan says that he thinks she paid over the currency to Bradley, but he is not so positive. Mr. Bradley says that he does not recollect whether she made the payment by a surrender of the certificates simply, or by first obtaining the money upon the certificates, and then paying the currency to him. One of the bank clerks testifies that, if the deposit certificate had been cashed, it would have been marked "Paid" upon the certificate register. Another clerk says that, if it had been paid, the cash would not have balanced, and that, from an examination

of the books, it appears that the cash balanced on that day. This is the only testimony that tends in any respect to contradict the positive testimony of the two persons present at the time. It is not shown what entry or that any entry of the transaction was made upon the books, and the fact that the certificate and check were stamped "Paid" upon that day negatives the theory that the certificate and check were simply placed with the mortgage, and laid aside to await the result of correspondence as to the tax receipt. It follows that, unless the relation of debtor and creditor was created between the bank and petitioner, the case is ruled by *In re Johnson*, 103 Mich. 109.

The rule laid own by Morse, Banks, § 567, that, when a bank acts as agent for the collection of bills or notes deposited, the property does not pass from the depositor, is fully supported by the authorities there cited. "When, however," says the author, "the money is collected and credited, it becomes a general deposit, unless the instructions are to *collect and remit*, and then, there being no authority to credit, the bank acts as agent throughout." *People* v. *Bank of Dansville*, 39 Hun, 187; *People* v. *City Bank of Rochester*, 96 N. Y. 32; *Libby* v. *Hopkins*, 104 U. S. 303; *Peak* v. *Ellicott*, 30 Kan. 156; *McLeod* v. *Evans*, 66 Wis. 401. In *Marine Bank* v. *Fulton Bank*, 2 Wall. 252, the notes had been sent on for collection, and afterwards, and before collection, the sender wrote instructing the bank to "hold the avails subject to my order." In *Phœnix Bank* v. *Risley*, 111 U. S. 125, the banks were correspondents, and, as such, had open accounts. There is a class of cases which hold that if the bank has mingled the deposit with its other moneys, so that they are indistinguishable, the *cestui que trust* cannot follow the fund into the hands of an assignee in bankruptcy, but must take the position of a general creditor. *Illinois Trust & Savings Bank* v. *Smith*, 21 Blatchf. .275. These cases are, however, opposed to the rule laid down in the Johnson case.

The question as to the effect of the receipt of the dividend is, we think, disposed of by *McLeod* v. *Evans, supra.* As is there said, petitioner has only received a portion of what was her due. The rights of no one have been prejudiced. No one has changed his position or lost any advantage which the law gave him in consequence of what the petitioner did.

The decree is affirmed, with costs to petitioner.

LONG and GRANT, JJ., concurred with McGRATH, C. J.

HOOKER, J. (*dissenting*). In this case it is claimed by the petitioner that on February 14, 1893, one Mrs. Glasier paid certain money to the defendant bank, upon a mortgage owned by petitioner, which was in the hands of the bank for collection, and that the bank did not remit the same to the petitioner, but mingled it with the cash of the bank. Soon after, the bank closed its doors, by reason of insolvency; and this is a proceeding to compel the receiver to pay the claim, upon the ground that the money was a trust fund. The case of *In re Johnson*, 103 Mich. 109, is relied upon as establishing the liability. In that case money was paid to the bank upon a mortgage left for collection by the owner, with express directions not to place the amount to his credit, but to notify him at once, as he wished to use the money. The amount, when received, was not credited, but was carried in a fictitious account. It was shown that the money was mingled with the cash belonging to the bank, and not shown that the fund was ever exhausted, but it did show a balance in excess of the amount received in trust, each day after it was received until the receiver took possession. That case nowhere contains an intimation that, had the fund once been exhausted, the petitioner would have stood upon any footing different from that of other creditors, while had it been intended to hold that relief could be had as prayed, on the ground that the money had been

received, and had gone to swell the assets of the bank, the discussion indulged in would have been uncalled for.

In the present case the testimony as to payment is contradicted. It is plain that Mrs. Glasier first deposited the sum in the bank, taking a certificate of deposit and a cashier's check. As this was before the bank received the collection, it must be held to have established the relation of debtor and creditor between the bank and Mrs. Glasier. On February 14th she attempted to make payment. Mr. Dolan went with her, and *thinks* he saw her pay the money. Another witness says that she was present, and saw Mr. Dolan count the money, and saw it paid upon the mortgage. Mrs. Glasier was not present at the hearing, her sister testifying that she was ill, and not able to be present in court. On the other hand, the books of the bank indicate that the payment was made by the surrender of the certificate of deposit and cashier's check, which evidence is quite convincing. The petitioner also relies on a letter from the receiver to petitioner's representative, in which he states that he finds the papers properly indorsed, and the money on deposit in the bank, and that it ought to have been sent at once when received, but that she would have to make proof of claim like other creditors. This does not throw any light on the question of how the mortgage was paid—*First*, because the receiver does not profess to have any knowledge upon that subject; and, *second*, his admissions have no force. It is not within the scope of his office to admit away the trust fund. In this respect he is upon the same plane as an administrator. *Gilkey* v. *Hamilton*, 22 Mich. 283. The testimony of Dolan is not at all positive, and, while the remaining witness testifies positively, she may have in mind another occasion. On the other hand, the natural method of making payment would have been to surrender the evidences of deposit, instead of drawing the money upon them, and paying it back again. No one testifies that such payment was made, and the bank balance

would probably have shown a discrepancy had the money been paid and no entry made in the cash account.

Having reached the conclusion that money was not received, the other questions become unimportant, unless we are to take the view that it makes no difference whether payment was made in cash or by surrender of evidences of debt against the bank. We think this position is untenable. That would be to convert an indebtedness into a trust fund at once. Let it be understood that such is the law, and it would be easy to shift the indebtedness of all holders of certificates of a failing bank into trust funds, by merely making special deposits of them for the benefit of another. There is some reason for the doctrine that a fund cannot be treated as a fund held in trust, unless that appropriated to the purposes of the trust can be traced into it, and shown to constitute a part of it. The Johnson case follows a line of authority which relaxes the rigor of this rule by applying rules kindred to such as relate to the improper intermingling of property. The propriety of the doctrine there laid down is not recognized by all of the courts, and its expediency is, perhaps, questionable. The rule should not be extended to cover a case like this. *Sherwood* v. *Milford State Bank*, 94 Mich. 78. But unless the fund can be identified, as being or containing the actual fund, the trust cannot be enforced against general creditors. *Willett* v. *Stringer*, 17 Abb. Prac. 152; *In re Janeway*, 4 N. B. R. 100; *Bank of Commerce* v. *Russell*, 2 Dill. 215; *Englar* v. *Offutt*, 70 Md. 78; *Thompson's Appeal*, 22 Pa. St. 16; *Northern Dakota Elevator Co.* v. *Clark*, 3 N. Dak. 26; *Veil* v. *Mitchel*, 4 Wash. C. C. 105; *Van Alen* v. *Bank*, 52 N. Y. 1; *Illinois Trust & Savings Bank of Chicago* v. *First Nat. Bank of Buffalo*, 15 Fed. 858, and cases cited; *Holmes* v. *Gilman*, 138 N. Y. 369; *In re Hosie*, 7 N. B. R. 601. See, also, dissenting opinion of Cassoday, J., in the case of *McLeod* v. *Evans*, 66 Wis. 413.

The order of the circuit court should be reversed, and

one entered here dismissing the petition, with costs of both courts.

Since the foregoing opinion was written, Prof. Mechem, of the University, has called attention to the fact that the case of *McLeod* v. *Evans* has been overruled, so far as it is applicable to this case, by the recent case of *Nonotuck Silk Co.* v. *Flanders*, 87 Wis. 237, in an opinion that is in accord with the views above expressed.

MONTGOMERY, J., concurred with HOOKER, J.