## LUSK DEVELOPMENT & IMPROVEMENT CO.
## v. GIINTHER*
### (No. 1177; January 14th, 1925; 232 Pac. 518)

BANKS & BANKING—ESCROW FUNDS—TRUSTS—IDENTIFICATION OF TRUST FUND.

1. Money paid to bank to obtain deed held in escrow by it, *held* received in fiduciary capacity, not as creditor of grantor, as respected right to preference upon receivership, though worthless draft on another bank was sent to grantor without his consent for such amount.

2. Trust creditor is not entitled to preference over general creditors of insolvent trustee, unless property is capable of ascertainment and identification in hands of another than bona fide purchaser, and trust fund, in form of money, though it does not lose its identity because mingled with trustee's personal moneys, may be followed and recovered only when it can be traced and identified in some specific fund or property.

3. Burden of tracing and identifying trust money in specific fund or property in hands of insolvent trustee's receiver, is on cestui, but burden of producing further evidence may be shifted to opponent, by presumption that trustee, mingling trust money with his own, drew out his own in preference to trust money.

4. Presumption is that bank, which closed only five days after receipt of trust money, did not pay it out, in absence of evidence other than that its account in bank, on which draft sent to cestui was drawn, was dissipated, or did not come into receiver's hand.

*NOTE—See Headnotes—(1) 7 C. J. p. 751; (2) 36 Cyc. p. 530; (3) 39 Cyc. pp. 532, 539; (4) 7 C. J. p. 752.

APPEAL from District Court, Niobrara County; WILLIAM A. RINER, Judge.

Action by the Lusk Development and Improvement Company against Geo. H. Giinther, Receiver of the Bank of Lusk. Plaintiff sought to establish preference against funds in the hands of the Receiver. From an order refusing preference, it appeals.

*J. G. Hartwell,* and *Lewis & Grant* for appellant.

The deposit was for the purchase of property and special; 11 Michie on Banks and Banking, 153; Hiatt Co. v. Bank, (Wash.) 195 Pac. 13; Kies v. Wilkinson, (Wash.) 172 Pac. 351; the bank held the money in trust; Kimmel v. Dickson, 5 (S. D.) 221 58 N. W. 561; Shopert v. Bank, (Ind.) 83 N. E. 515; Lennan v. Bank, (S. D.) 110 N. W. 834; it was virtually a collection; Brown v. Bank, (Ia.) 117 N. W. 289; Foster v. Rincker, 4 Wyo. 484; Bank v. Bank, 46 N. Y. 82; Harrison v. Smith, 83 Mo. 210; Springfield Inst. v. Copland, 160 Mass. 380; Guigan v. Bank, (Mont.) 55 Pac. 1051; Meyers v. Bd., 51 Kans. 87; Bank v. Mining Co., 105 Ill. 103; Montagu v. Bank, 81 Fed. 602; Secrest v. Ladd, (Kans.) 209 Pac. 824; Lamb v. Ladd, (Kans.) 209 Pac. 825; a special deposit converted by a bank to its own use creates a trust, 3 R. C. L. 566; the assets were increased thereby, 3 R. C. L. 522; mingling of funds with general deposits of the bank did not destroy its trust character; Whitcomb v. Carpenter, (Ia.) 111 N. W. 825; Bank v. Bank, (Nebr.) 69 N. W. 115; Covey v. Cannon, (Ark.) 1409 S. W. 514; this is especially true where the bank was insolvent; 1 Michie 501; Bank v. Dennis, (N. M.) 146 Pac. 928; if collection not completed prior to insolvency money thereafter received is trust funds; Flaumery v. Coates, 80 Mo. 44; Bank v. Hubbell, (N. Y.) 22 N. E. 1031; Kime v. Ladd, (Kans.) 211 Pac. 628; Balbach v. Frelinghauysen, 15 Fed. 675; receiving money by an insolvent bank is a fraud; Widman v. Kellog, (N. D.) 133 N. W. 1020; St. Louis Ry. Co. v. Johnson, 133 U. S. 566; Orme v. Baker, 740 S. 337.

*E. Paul Bacheller* and *Harold Bacheller* for respondent.

The record fails to show that any directions were given the bank of Lusk as to the disposition of the funds; the Foster case involved a collection; considering the present transaction as a collection the bank acted as appellant's agent, 1 Morse 446, and acted within the scope of its

agency in remitting by draft; 2 C. J. 921; the relation of debtor and creditor were thereby created; 3 R, C. L. 632; a bank deposit is presumed to be general in the absence of agreement to the contrary; Cabrera v. Thannhauser, 192 Pac. 45; the burden of showing a special deposit rest on the depositors; Bank v. Bank, 103 Mo. App. 357; there is no evidence of insolvency of the bank, 7 C. J. 727; Owens v. Bank, (Tex.) 81 S. W. 988; appellant failed to trace the funds into the hands of the Receiver or into the assets of the bank and cannot recover, 3 R. C. L. 552; Morse on Banks and Banking, (5th Edition) Vol. II, 589-630; appellant is not entitled to a preference.

Blume, Justice.

The appellant sued the receiver of the Bank of Lusk to have a claim filed with said receiver in the sum of $4316.56 declared to be a prior lien upon the assets of said bank. The court allowed the claim as a general claim, but refused to grant any preference, from which order the appellant has taken an appeal to this court.

According to the stipulation of the parties, filed in the court below, the Bank of Lusk had, on December 17th, 1920, in its possession, in escrow, a warranty deed of which appellant was grantor and H. C. Snyder & Company grantee, conveying certain property in Niobrara County, Wyoming. Under the escrow agreement, the said bank was to deliver said deed to said grantee upon payment by said grantee to said bank for the benefit of appellant the sum of $4314.00. On December 17th aforesaid said H. C. Snyder & Company paid said sum to said bank in conformity with said agreement and received said warranty deed. On December 20th, 1920, said bank, in order to pay said amount over to plaintiff, whose principal office was in Denver, Colorado, sent to the latter its draft in said amount of $4314.00, drawn on the Corn Exchange National Bank of Omaha, Nebraska. The draft was presented to the latter bank in due course and payment refused

for want of sufficient funds. In the meantime, and on December 22nd, 1920, the Bank of Lusk closed its doors, and as we gather from the record, the Omaha bank immediately appropriated all the money then to the credit of the Lusk bank on alleged past due indebtedness, although a sufficient amount was on deposit there on December 20th to pay said draft. In due course of time the respondent herein was appointed receiver of said Bank of Lusk. The appellant had a checking account with the latter bank from March, 1919 to the time that it closed its doors, with a balance of $291.05 on December 22, 1920, but the money paid by H. C. Snyder & Company by reason of said deed was not credited to said account, and we may take it for granted herein, we think, from the facts shown, that the money so paid on December 17, 1920 was mingled with the general money which the Bank of Lusk had on hand at the bank on that date. Two main points only are presented by the brief: (1) Whether or not the amount so paid by H. C. Snyder & Co. became a trust fund, and (2) whether said money has been sufficiently traced so that the claim therefor should be entitled to preference.

1. If the relation of debtor and creditor was created between appellant and the Bank of Lusk by reason of the payment made as aforesaid by H. C. Snyder & Co., then the money so paid could not be considered a trust fund. If, on the other hand, the relation was that of principal and agent or bailor and bailee, then the contrary would be true. The record does not show any specific direction by appellant as to what was to be done with the money when collected by the bank, but the only inference possible to be drawn from the acts of the bank itself, namely, from the fact that the money was not credited to appellant's general account, but was attempted to be paid over to the latter by draft on the Omaha bank, is that it was not to remain in the bank to appellant's credit, but was to be paid immediately over to the latter. We think, therefore,

that the facts bring the case clearly within the holding in Foster, Receiver, v. Rincker, 4 Wyo. 484, 35 Pac. 470, and we must hold that the money was received by the bank in a fiduciary capacity. The cases sustaining the rule in the Rincker case are many, a few of which we cite. Wallace v. Stone, 107 Mich. 190, 65 N. W. 113; Windstanley et al v. Bank, 13 Ind. App. 544, 41 N. E. 956; Hawaiian Pineapple Co. v. Brown, (Mont.) 220 Pac. 1114 and cases cited; Dickerson v. Watson, 47 N. Y. 439, 7 Am. Rep. 455; Beal v. Sommerville, 50 Fed. 647, 1 C. C. A. 598, 17 L. R. A. 291; Macy v. Roedenbeck, 227 Fed. 346; 142 C. C. A. 42; L. R. A. 1916 C. 12. Counsel for the receiver claim that because of the fact that a draft on the Omaha bank was sent to appellant, the situation is changed. We cannot, however, see how the bank could fully perform its duty in paying over the money, but on the contrary establish the relation of creditor and debtor between the parties, without appellant's consent, by the sending of a draft which turned out to be worthless. The authorities appear to be against respondent's contention. State Nat. Bank v. First Nat. Bank, 124 Ark. 531, 187 S. W. 673; Hawaiian Pineapple Co. v. Brown, supra; People v. Bank, 39 Hun. 187; Messenger v. Bank, 193 Ia. 608, 187 N. W. 545; Brown v. Bank, 139 Ia. 83, 90, 117 N. W. 289. In the last mentioned case the money was drawn out of the drawee bank by the drawer of the draft, but it is plainly immaterial as to the manner in which the funds expected to meet the draft became exhausted. In that case the court aptly said:

"Counsel for the receiver seems to think that there is something in the fact that a draft was at once drawn and sent forward that serves to warrant the denial of preference. We do not see how this can be. It may be, as counsel suggests, that had the draft so drawn been presented for payment on the day it was drawn, or even on the following day, it would have been paid. But that cannot be accepted as ground sufficient on which to defend the decree. The Shel-

don bank chose to make returns of the collection by Chicago draft. Of necessity two days, at least, must elapse before such draft could be presented. In the meantime the bank had drawn out of the Chicago bank its funds available to meet the draft. As far as claimant is concerned, therefore, the case stands precisely as if the Sheldon bank had never had any funds in the Chicago bank. It requires no citation of authorities to make it clear that settlement, as for collection made, is not accomplished by forwarding a draft, which on being presented for payment within a reasonable time, as was this, is repudiated for want of funds.''

2. We come then to the next and main question in the case, that is, whether or not the money has been sufficiently traced and identified in the hands of the receiver. An exhaustive note on the subject is found in L. R. A. 1916 C, 21-89. This court in State v. Foster, 5 Wyo. 199, 38 P. 926, 29 L. R. A. 226, 63 Am. St. Rep. 47 adopted a rule which makes it unnecessary at this time to enter into any lengthy discussion of the point under consideration. The right of a cestui que trust to pursue and reclaim trust funds and its increase rests upon the right of property. A trust creditor is not entitled to a preference over general creditors of the insolvent merely on the ground of the nature of his claim. If he is permitted to follow and recover it, it is because he owns it, either in its original or in some substituted form. Spokane County v. Bank, 68 Fed. 979; 19 C. C. A. 81; Holmes v. Gillman, 138 N. Y. 369, 34 N. E. 205, 20 L. R. A. 566, 34 A. S. R. 463, 34 N. E. 205; Cavin v. Gleason, 105 N. Y. 256, 11 N. E. 504; 39 Cyc. 529. Hence, if such trust fund no longer exists, but has been dissipated, there remains nothing to be subject to the trust. State v. Foster, supra; Frith v. Cortland, 2 H. & M. (Eng.) 417; City of Lincoln v. Morrison, 64 Neb. 822, 828; 90 N. W. 905, 57 L. R. A. 885; Ellicott v. Kuhl, 60 N. J. Eq. 333, 46 Atl. 945. And in order to determine whether it continues to exist or not, it must necessarily be capable of being ascer-

tained and identified. So long as that can be done, it remains the property of the cestui que trust, but when the means of ascertainment and identification fails, the trust itself fails, and there would be no justification in taking the property of others in order to satisfy the claim arising out of the trust. 39 Cyc. 531, 541, 551. This rule does not require that the trust fund should be capable of being traced in the identical form in which it passed into the hands of the trustee; the form thereof is generally changed, and it would be unjust to insist upon so rigorous a rule. Into whatsoever form or hands it may come, if it does not pass into the hands of a bona fide purchaser for value without notice, the right to follow the trust and to recover it exists if it can be traced and identified. 39 Cyc. 528. It is frequently mingled with individual property of the trustee as appears to have been done in the case at bar, and courts have from time to time been confronted with the difficult problem what to do in such a case, and have naturally not all come to a like conclusion. We have here only to do with trust money, and shall confine our discussion to that subject. Money, as such, has no earmarks, and is difficult to trace, and it was held prior to the decision of the famous case of Knatchbull v. Hallett, 13 Ch. Div. (Eng.) 696-753, that when a trust fund, in the form of money, became mingled with the personal moneys of the trustee it lost its identity and could not be traced. But that is no longer the rule. L. R. A. 1916 C, 68-71; City of Lincoln v. Morrison, 64 Neb. 822, 826, 90 N. W. 905, 57 L. R. A. 885. But there is a diversity of opinion as to how far it is necessary to identify it. Some of the authorities hold that it is not necessary to trace it to a particular fund or property, but that it may be followed and made a charge upon the general estate or assets of the trustee, or his receiver, when it can be traced into and shown to have augmented and bettered such assets in a substantial way. 39 Cyc. 530. That is the rule, judging from the cited cases, for which the appellant herein contends. The doctrine, however, es-

tablished by the greater number of cases, is that the money may be followed and recovered in equity, either in its original or substituted form, when, and only when, it can be traced and identified in some specific fund or property. 39 Cyc. 530; L. R. A. 1916 C, p. 47, 48.   This is the doctrine established in this state by State v. Foster, supra, and we think that we should adhere thereto.

Starting out, then, with this established principle, that the money in the case at bar must be traced and identified in some specific fund or property in the hands of the receiver—not, however, the identical money paid in—the question remains, whether, indulging in all proper presumptions, that has been done in this case.   The burden of proof to do so is on the cestui que trust.   39 Cyc. 532. But when certain facts are shown, a presumption may aid him and the burden to produce further evidence may shift to the opponent.   First Nat. Bank v. Ford, 30 Wyo. 110, 216 Pac. 601; 31 A. L. R. 1441.   The presumption is that men act honestly; that when a trustee mingles trust money with his own, and then draws out sums from a common fund by check or otherwise, it will be presumed that he drew out his own in preference to the trust money.   39 Cyc. 539.   Cases note 1916 C. 77 et seq; Waddell v. Waddell, 36 Utah 435, 104 Pac. 743.   This principle has frequently been applied to cases where an insolvent, at the time of the insolvency, had a certain balance of money on hand which went into the hands of the receiver, and in such case it has frequently been presumed that such balance included the trust money.   State v. Foster, supra; cases in note L. R. A. 1916 C. 78-82.   This, of course, is only a presumption, and will not stand against evidence; and it is a part of the rule applicable to following misappropriated moneys into a bank account, that, if at any time during the currency of the commingled account, the amounts drawn out leave a balance less than the amount of the trust money, the trust money must be regarded as dissipated to that extent, leaving the trust to be impressed

only on the smallest balance that appears to have been on hand at any time during such period. The sums subsequently added to the account from other sources cannot be attributed to the trust money. 39 Cyc. 540; 3 R. C. L. 553; Crawford County Bank v. Strawn, 157 Fed. 49, 84 C. C. A. 553, 15 L. R. A. N. S. 1100; Covey v. Cannon, 104 Ark. 550, 560, 149 S. W. 514; Hawaiian Pineapple Co. v. Bank, (Mont.) 220 Pac. 1114; Chase & Baker Co. v. Olmstead, 93 Wash. 306, 160 Pac. 952; Hewitt v. Hayes, 205 Mass. 356, 91 N. E. 332, 137 A. S. R. 418. In most of the cases that we have read, the balance of money that passed to the receiver was shown. In some cases the proof went further and showed the daily balance in the bank from the time that the trust money was mingled with it to and including the time that the receiver took possession. No such evidence appears in the record in this case. The money in the case at bar has only been traced to a definite fund in the bank, while the bank was still a going concern. If the period intervening between the making of the deposit, if we may call it so, and the time that the bank closed, were comparatively long, we should, perhaps, indulge in no presumptions that it remained in the fund into which the deposit was made. Bank Comm'rs. v. Security Trust Co., 70 N. H. 536, 550, 49 A. 113; Bishop v. Mahoney, 70 Minn. 238, 73 N. W. 6. But in the case at bar only five days intervened between the time that the payment herein was made and the time that the bank closed. The presumption is, as stated before, that men act honestly, and carrying that presumption to its logical conclusion, and applying it reasonably, as may well be done in the case at bar, we should, we think, presume that the trustee in this case did not pay out the trust money, but retained it, and that it passed into the hands of the receiver, hence throwing the burden to produce evidence to show the contrary on the latter. No such evidence has been produced, except that it is shown that the money in the Omaha bank was dissipated, or at least did not

come into the hands of the receiver.  We have found few cases that have passed upon this particular point under facts similar to those presented here.  In most of them, as stated before, the assets, including the cash on hand, were shown in the record.  Many of them state generally, with these facts in mind, that it is sufficient to trace the money into the mass that went into the hands of the receiver.  E. G. Cherry v. Terr., 17 Ok. 221, 89 Pac. 192, 8 L. R. A. N. S. 1254; Thompson v. Sav. Inst. (N. J. E. M. Spp.), 8 Atl. 97; Massey v. Fisher, (C. C.) 62 Fed. 958; Fire & W. Com'rs. v. Wilkinson, 119 Mich. 655, 78 N. W. 893, 44 L. R. A. 493; Windstanley et al v. Bank, 13 Ind. App. 544, 550, 41 N. E. 936; Woodhouse v. Crandall, 197 Ill. 104, 64 N. E. 292, 58 L. R. A. 385.  But in addition thereto these cases hold, at least inferentially, that the court is entitled to indulge in reasonable presumptions, leaving open only the question as to what is reasonable under the circumstances.  In the case of Smith v. Mottley, 150 Fed. 266, 80 C. C. A. 154, it is held that when the trust funds were received by a bank within ten days prior to an assignment made by it, it would be presumed that the assets which came into the hands of the trustee of the bankrupt were augmented by the trust fund, and that the burden to show the contrary is on the trustee.  The case of City of Lincoln v. Morrison, 64 Neb. 822, 829, 90 N. W. 905, 908 (57 L. R. A. 885), while possibly not fully sustaining our view herein, comes close to it, when it is said:

"When it is once proved that trust money has gone into the general estate of a trustee who afterwards becomes insolvent, it would seem that we ought to presume, in the absence of other evidence, that it remains therein at his insolvency, and that we ought not to say it cannot be traced, or has wholly disappeared where the contrary may fairly be inferred.  Sherwood v. Central Michigan Savings Bank, 103 Mich. 109, 61 N. W. 352; Independent District v. King, 80 Iowa 497, 45 N. W. 908."

In the case of Widman v. Kellogg, 22 N. D. 396, 404, 133 N. W. 1020, 1024, 39 L. R. A. N. S. 563, 568, it is said:

"One reason of great force for the trustee assuming the burden of proving that he paid out the trust funds instead of his own, and that the trust funds did not pass into the hands of the receiver, is that in case of money, the means of knowledge on these subjects would not be possessed by the cestui que trust, but that the means of proof of the facts regarding it would ordinarily be wholly within the possession or control of the trustee. This is peculiarly so in the case of a bank."

In the case of Murray v. Bank, 196 Iowa 729, 735, 195 N. W. 354, 356, it was said:

"The trust fund came lawfully into the possession of the savings bank as the agent of appellee, and it will be presumed that the fund was retained in its custody, and that it was turned over to the receiver, unless the contrary is shown."

It follows from what we have said that the case must be reversed and, under the circumstances, remanded for a new trial, so that upon another hearing the facts may be shown and judgment entered not inconsistent with the principles of law herein stated. It is so ordered.

*Reversed and Remanded.*

POTTER, Ch. J., and KIMBALL, J., concur.