No. 11,685.

MORANDI v. ITALIAN-AMERICAN BANK OF DENVER.

Decided December 6, 1926. Rehearing denied January 3, 1927.

Action by purchaser of a draft to be declared a preferred creditor of an insolvent bank. Judgment for defendant.

*Affirmed.*

*On Application for Supersedeas.*

1. BANKS AND BANKING—*Foreign Exchange—Insolvent Drawer.* The purchaser of foreign exchange in the regular course of banking business, in the event of nonpayment by the drawee, and insolvency of the drawer bank, is not entitled to a preference over general creditors of the latter. The general rule is, that such preference is not recognized except where money or property has been received by the bank in such circumstances as to impress upon it the duties of a bailee, agent or trustee of the true owner.

2. *Drafts—Debtor and Creditor.* In the ordinary purchase of a bank draft the relation between the bank and the purchaser is not that of bailor and bailee, principal and agent, or trustee and cestui que trust, but that of creditor and debtor.

*Error to the District Court of the City and County of Denver, Hon. Charles C. Sackmann, Judge.*

Mr. WILLIAM YOUNG, for plaintiff in error.

Mr. FRANK C. WEST, for defendant in error.

*Department Three.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

GIUSEPPE MORANDI, plaintiff in error, seeks a review of a judgment of the district court rendered in a special statutory proceeding to set aside an order of the state bank commissioner rejecting his claim to be a preferred creditor of the Italian-American Bank of Denver, then in process of liquidation by the bank commissioner who had taken charge of its affairs. The material facts to which the law of the case is to be applied are embodied in a written stipulation of the parties, taken in connection with the admitted or not denied allegations of the respective pleadings. The pleadings do not qualify, or detract from, the stipulation. The facts may thus be summarized: January 12, 1925, the petitioner Morandi purchased of the Italian-American Bank of Denver the bank's draft in customary form upon Credito Italiano, Naples Branch, for 80,850 lire, payable in Como, Italy. The agreed price for this draft, having regard to current rates of exchange, was $3,500, plus a fee of $22.50, of which the petitioner Morandi paid to the bank $22.50 in cash and the balance with a cashier's check of the Denver National Bank in the sum of $4,097.86. The draft was issued by the Denver Italian Bank and delivered to Morandi who received in cash $597.86 of the proceeds of the cashier's check, which check was deposited in the American National Bank to the credit of the Denver Italian-American Bank. January 28, 1925, this Italian Bank, being insolvent, discontinued business and placed its assets and affairs in the possession of the state bank commissioner. On that date the bank had on hand in cash $1,190.54 which came into the possession of the commissioner. It also had on deposit with the American National Bank of Denver funds in excess of

$3,522.50, but this deposit on the same day was wholly appropriated by the latter and applied on an indebtedness then owing by the Italian-American Bank to the former.

Shortly after January 28, Morandi presented this draft for payment at a branch of Credito Italiano in Italy, and payment was refused on the ground that the bank in Italy had not been advised of the issuance by the Denver Italian Bank of such draft, and also upon information which it had received that the Italian bank in Denver had discontinued business. Sale of this draft to Morandi was an instance of the regular banking business of the Italian-American Bank in dealing in exchange upon Italy, in the regular conduct of which such bank was accustomed to issue drafts upon the bank in Italy made payable at some conveniently located branch of the latter institution with which the Denver Italian-American Bank maintained an open account for that purpose. In this case drafts were drawn in duplicate; one was delivered to the purchaser and the other forwarded to the bank. From time to time, and to meet drafts as they were presented, the Italian-American Bank of Denver would increase its credit balance with the bank in Italy by transfer of credit through its corresponding bank in New York. The Italian-American Bank is insolvent to such a degree that only a small portion of the claims of creditors will be paid from the assets in the hands of the state bank commissioner. It is to such a state of facts that the appropriate rule of law is to be applied.

First we observe that in the amended petition of Morandi the allegation is that the petitioner delivered to the Italian-American Bank the sum of $3,500 which was to be transmitted and forwarded by the Denver bank to Como, Italy, and that the petitioner paid to this Denver bank the sum of $22.50 for its charges for transmitting the delivered sum to Como. Apparently this allegation was made to bring the case within the rule laid down in

*First National Bank v. Hummel*, 14 Colo. 259, 23 Pac. 986, 8 L. R. A. 788, 20 Am. St. Rep. 257. In the Hummel case it was said that the fund there in question, which was held to be a trust fund, was of that character because it was the duty of the custodian of the fund to whom it was entrusted to transmit the identical money so received to the German National Bank for the credit of the plaintiff by whom the fund was delivered. The stipulation of the parties in this case differentiates the case in hand from the Hummel case in that here the stipulation of the parties recites that Morandi purchased from the Italian-American Bank the bank's draft in customary form which was payable in Como, Italy, and that the $22.50 which the petitioner says was the amount he paid to the Denver bank for the costs of transmitting the identical fund to Italy, was the price which the bank charged as a fee for the transaction, the costs of the exchange, and not for such costs of transmission. The stipulation further recites that the sale of this draft to Morandi was an incident of the regular business of the Italian-American Bank in dealing in exchange upon Italy. By the stipulation the real question before us for determination is whether the purchaser of foreign exchange, in the event of nonpayment by the drawee and the insolvency of the drawer bank, is entitled to a preference over general creditors of the latter. The general rule is that such preference is not recognized, except where money or property has been received by a bank in such circumstances as to impose upon it the duties of a bailee, agent or trustee for the true owner. *Slater v. Oriental Mills,* 18 R. I. 352, 27 Atl. 443; *Cavin v. Gleason,* 105 N. Y. 256, 11 N. E. 504; *Spokane County v. First Natl. Bank,* 68 Fed. 979; *Holmes v. Gilman,* 138 N. Y. 369, 34 N. E. 205, 20 L. R. A. 566, 34 Am. St. Rep. 463.

The Hummel case, supra; *Foster v. Rincker,* 4 Wyo. 484, 35 Pac. 470, *Lusk Devel. & Imp. Co. v. Günther,* 32 Wyo. 294, 232 Pac. 518, and *Wallace v. Stone,* 107 Mich. 190, 65 N. W. 113, relied upon by plaintiff in error, are

not in point. In the Hummel case, and also in *Hummel v. First National Bank,* 2 Colo. App. 571, 32 Pac. 72, the transaction in question was such as to require the bank that received the funds to transmit the same in specie. The stipulated facts here are entirely different. This transaction is merely the ordinary one of the purchase of a bank draft and the same is not attended with the results claimed by the petitioner plaintiff in error. The authorities support our conclusion that in such a transaction the relation between the parties thereto is not that of a bailee, or principal and agent, or trustee and cestui que trust, but is that of creditor and debtor. In such a transaction there is no preferential claim of the purchaser of a draft in case of a failure of the drawee to pay it or the subsequent insolvency of the drawer. It may be, and doubtless is, a serious loss to the petitioner to lose so large a part of the money he paid for this draft; so also is it a hardship to the depositors of the Italian Bank of Denver that they will get only a small portion of their deposits in the bank which were there at the time of its failure. This transaction was not in the nature of a special deposit or a mere contract of transfer of a fund in specie from Denver to Como, Italy. It was the ordinary one of purchase of a draft for the convenience of the purchaser in remitting money. The following additional authorities, among others, are in point and they are emphatically against the contention of the petitioner here: *Clark v. Toronto Bank,* 72 Kan. 1, 82 Pac. 582, 115 Am. St. Rep. 173, 2 L. R. A. (N. S.) 83, 86, 87 and notes; *Spiroplos v. Scandinavian-Amer. Bank of Tacoma,* 116 Wash. 491, 199 Pac. 997, 16 A. L. R. 181, and notes; *Legniti v. Mechanics' & Metals Nat. Bank of N. Y.,* 230 N. Y. 415, 130 N. E. 597, 16 A. L. R. 185, and notes.

Application for supersedeas is denied and judgment affirmed.

MR. JUSTICE BURKE, sitting as chief justice, and MR. JUSTICE SHEAFOR concur.